# Philadelphia Co. *v.* Central Traction Co. and Charles A. Balph, Appellants.

*Negligence—Natural gas company—Street railway—Skilled labor.*

A natural gas company which is compelled to pay damages for personal injuries caused by the leakage of gas from a defective pipe, may recover from a street railway company whose negligent excavation in the street caused the pipe to break.

In such a case a compromise and payment to the injured parties of an amount less than the judgment which they recovered, but before the appeals taken from the judgment were decided by the Supreme Court, will not prevent the gas company recovering from the street railway company the sums paid when they are admitted to be reasonable and not contested as to amount.

In the above case the two companies agreed that the gas company should provide the skilled labor that would be necessary to provide for any changes in its lines made necessary by the excavation and constructive work of the railway company. It appeared that the break in the pipes was caused by the negligence of the railway company in not tamping the earth when it was thrown back into the excavation. *Held,* that the work whose negligent performance caused the injury was not skilled work within the meaning of the agreement.

Argued Oct. 25, 1894. Appeal, No. 140, Oct. T., 1894, by defendants, from judgment of C. P. No. 2, Allegheny Co.,

April T., 1893, No. 520, on verdict for plaintiff.  Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ.  Affirmed.

Trespass to recover money paid by plaintiff for injuries caused
by negligence of defendants.  Before WHITE, J.

At the trial it appeared that in November, 1889, an explosion
occurred from gas leaking through a broken pipe of plaintiff
company into the cellar of Mary A. Glass.  Mrs. Glass's house
was destroyed and a servant injured.  Both Mrs. Glass and her
servant brought actions against plaintiff company, and recovered
judgments.  Appeals were taken in both cases, but before they
were reached in the Supreme Court a compromise was effected,
and the injured parties settled for about seventy-five per cent
of the amount of their judgments.

From the evidence it appeared that the leaking of the gas was
in consequence of the pipe of plaintiff company sinking down
in an excavation made by defendant company in constructing
a vault in the street for their power house.  The negligence
charged upon defendant company was in not properly filling up
the excavation under the pipe and tamping the ground.  Before
the work was undertaken it appeared that the two companies
agreed in substance that plaintiff company should provide the
skilled labor that would be necessary to provide for any changes
in its lines made necessary by the excavation and constructive
work of defendant company.

The court charged in part as follows :

"Although the plaintiff company may not have known any-
thing about the manner in which the earth was filled in under
the pipe, or in what condition it was left, yet if they neglected
any duty which they owed the public, and were not as careful
and prudent as they ought to have been as to the public, they
might be responsible for that negligence, and in that way be
responsible for the injury to the house, and also the injury to
the servant girl, just on the same principle as a city may be
responsible for a defect in the street, either an excavation in
the street made by some person in building a house, or an
obstruction in the street by which some person was injured; if
it remains there long enough for the city to know anything
about it, although the city did not cause it, yet the city may

be responsible. But the city can turn around and sue the party who did the wrong. The city's negligence would be in not removing the obstruction or not repairing the street. If they have been guilty of negligence in not repairing it after they knew that that excavation existed, they may be liable on that ground, and then the city can turn around and sue the party who caused the excavation, or the obstruction in the street. So I apprehend that while this pipe was bared there, it would be very proper for the plaintiff to have men to watch it, not to watch the defendants, to see what they did, but to watch so as to guard and protect themselves or the public. If that pipe had begun to leak during the time it was exposed, and the plaintiff company had not been watchful over it, they might be liable. If the pipe was broken in consequence of the wrongful acts of the defendants, and plaintiff company had been mulct in damages, it can turn around and sue the defendants for their wrongful act which caused it. If a man employs another one by the day to dig through the street for a sewer, or to lay pipes, and it is left open at night, or the work is done in such a negligent way that somebody is injured, the owner of the property may be responsible, because every man is responsible for the negligence of his servant, or his employee, in performing the work that he has directed him to do. The party guilty of negligence, and guilty of the wrongful act, may also be responsible. Therefore, gentlemen, the fact that there was a recovery against the plaintiff company in these cases is not enough to excuse these defendants. If they were guilty of negligence which caused the accident, they are responsible—might have been sued originally, or the plaintiff company, having been sued and compelled to pay, may turn around and sue the defendants. . . .

" [According to the evidence, therefore, the cause of this gas escaping that caused the accident was the sinking of that main pipe, and that sinking was occasioned by taking away the supports or props underneath it, and not tamping the ground properly under the pipe, so that it sank, causing the gas to escape. Now, the question is, who is responsible for that? That was negligence. It was negligence in not propping it, or keeping that pipe propped up, or not tamping the earth under it so that it would remain safe and sound, and I say to you

again, it was the duty of the Traction Co., and all those employed under the Traction Co., to leave that pipe in just as good and safe condition as it was when they commenced their excavation. True, if the plaintiff company had agreed to do all of this, and take care of it themselves, it would be different. Then the responsibility would rest upon the plaintiff company. But I do not remember any evidence at all in this case that the plaintiff company agreed with the defendant company to take care of the pipe, so as to fill it in and support it, and keep it in that condition. Now somebody was responsible for filling in the earth under that pipe, and filling it in an improper way, or improperly removing those supports. Who is responsible for it? It is proven, not contradicted, that it was done by the employees working there at the job that Mr. Balph was doing, or working for the Traction Company. It is uncontradicted that the men that Mr. Balph had employed there did this work; no one connected with the plaintiff company had anything at all to do with it, and, according to the testimony of the witnesses on the part of the plaintiff, they did not know at the time that this filling was being done, that the supports were removed, and never discovered that the supports had been removed, until after the explosion, when they bared the pipe and began to examine it.] " [7]

Defendants' points were as follows :

1. Request for binding instruction. Refused. [1, 6]

" 2. The records in the suits of Eckendorver v. Phila. Co. at No. 165 Oct. T., 1892, and of Glass v. Phila. Co. at No. 205 Oct. T., 1892, of the Supreme Court of Pennsylvania, show that those cases were submitted to the jury upon the question of independent negligence of the Phila. Co. and its ultimate liability, and the verdict here must be for the defendants." Refused. [2]

" 3. The records in the Supreme Court referred to in the second point show that the question of the full assumption of the care of the pipe line by the agents of the Phila. Co. was left to the juries in those cases and the verdict here must be for the defendants." Refused. [3]

" 4. The records referred to in the second and third points, showing a compromise by the Phila. Co. with the plaintiffs after a reargument had been ordered by the Supreme Court and

before a final judgment had been entered, the Phila. Co. was a mere volunteer so far as the defendants in this case are concerned, and the verdict must be for the defendants." Refused. [4]

"5. The witness of plaintiff, Mr. Wilcox, having testified that the Phila. Co. had a general arrangement with the Central Traction Co., by which the Phila. Co. was to furnish skilled labor for the care of their pipes, the Central Traction Co., itself doing none of the work, had a right to rely upon the Phila. Co. to take care of all pipes moved or exposed, if the Phila. Co. had actual notice of pipes exposed or in precarious condition, and if the jury find such actual notice as to the pipe in this case, no verdict can be rendered against the Central Traction Co." Refused. [5]

Verdict and judgment for plaintiff for $6,962.37.

*Error assigned* was (1–7) instructions, quoting them.

*Thomas Patterson, E. W. Smith* with him, for appellant.— An inspection of the record in the Glass and Eckendorver cases shows that plaintiff company was held responsible only for its own direct negligence and not in any sense constructively for the negligence of defendant company.   In both cases it was distinctly pointed out that if the negligence of the latter company was the cause of the injury, and plaintiff company was free of actual neglect, there could be no recovery against it.

The evidence discloses that so far from defendant company being under a duty to plaintiff company to take measures to guard against the happening of the accident complained of, the duty was the other way.   Plaintiff company was bound to take whatever precautions might be necessary to preserve its lines.

Even aside from the contract in the case, the plain duty of the superintendents of plaintiff company, with the knowledge they possessed of the excavation at the power-house, was, at the very least, to explain to the contractor and his men, or to the representatives of defendant company, what necessary precautions should be taken in refilling the earth.

*George B. Gordon, John Dalzell* and *William Scott* with him, for appellee.—When a man undertakes to do a thing, whether

he is bound to or not, he must exercise ordinary care and skill in the doing of it, and if he does not he is responsible for the consequence, which is the direct converse of the proposition as set up by appellant.

The settlement of such a case, even without suit, would not discharge the wrongdoer. At the utmost the only effect that it would have would be to place the burden upon plaintiff company of showing that the amount paid was reasonable : Gray v. Gas Light Co., 114 Mass. 149; Swansey v. Chace, 16 Gray, 303; Hamilton v. Cutts, 4 Mass. 349 ; Mill Co. v. Wheeler, 31 Minn. 121 ; Dixon v. Fawcus, 3 E. & E. (Eng. Q. B.) 537.

The testimony discloses, (1) that the injuries to Eckendorver and to Glass resulted from the explosion of gas which escaped from plaintiff company's pipes; (2) that the exact amount of injury sustained by them had been paid by plaintiff company ; (3) that the proximate cause of the explosion was the gross negligence of the defendant company; (4) that plaintiff company was primarily responsible therefor to the parties injured : Koelsch v. Phila. Co., 152 Pa. 355 ; Brookville Boro v. Arthurs, 130 Pa. 501; Robbins v. Chicago, 4 Wal. 657 ; Dixon v. Fawcus, 3 E. & E. 537 ; Blewitt v. Hill, 13 East, 13 ; Lowell v. R. R., 40 Mass. 42; Westfield v. Mayo, 122 Mass. 100; Cambell v. Summerville, 114 Mass. 334; Swansey v. Chace, 16 Gray, 303 ; Blanchard v. Ins. Co., 12 Allen, 386 ; Lowell v. Short, 4 Cush. 275 ; Churchill v. Holt, 127 Mass. 165 ; Veazie v. R. R., 49 Maine, 119 ; Duxbury v. R. R., 26 Vt. 751; Gridley v. Bloomington, 68 Ill. 47; Catterlin v. Frankfort, 79 Ind. 547 ; Ottumwa v. Parks, 43 Ia. 119; Rochester v. Montgomery, 72 N. Y. 65; Mill Co. v. Wheeler, 31 Minn. 121.

A property owner whose negligence was the primary cause of the injury cannot set up the claim that he was relieved because of the finding that the city had been guilty in allowing him to do it: Churchill v. Holt, 127 Mass. 165.

OPINION BY MR. JUSTICE MITCHELL, Jan. 7, 1895 :

The actions by Glass and Eckendorver against the plaintiff company of course charged and proved negligence against it, or there could have been no recovery in them. But it was the negligence of not performing the duty to the public of keeping its pipe lines in proper and safe condition. Whether there was

an initial negligence of the present defendant out of which plaintiff's default arose, might or might not have been shown in the trial of those cases, and may or may not appear in the records, but was not material and could not affect the results of those actions, or the question in the present case of the liability as between the plaintiff and defendant. The second and third assignments of error, and the argument upon them, are satisfactorily answered by the illustration given by the learned judge in his charge, of the common case of a municipality being held liable to a party injured by an obstruction in the street, yet having an unquestionable right to recover from the person who put it there : Brookville v. Arthurs, 130 Pa. 501, 152 Pa. 334.

The fourth assignment of error cannot be sustained. The compromise and payment of the claims of Glass and Eckendorver before a decision of this court on the appeals did not make the plaintiff a volunteer. There was no obligation to take an appeal from the judgment on the verdict, in the first place, or to prosecute it any further than seemed to be prudent and advantageous. The verdict was against plaintiff and the compromise reduced the amount for which plaintiff was prima facie liable, and for which it would have a claim against the defendant. The compromise therefore was apparently in the interest of defendant as much as of plaintiff, and it is agreed that the amounts paid were reasonable.

The cause of the accident is stated in the charge, and apparently conceded, to be the sinking of the pipe as a result of taking away the props or supports under it, and not tamping the earth when it was thrown back into the excavation. This was prima facie the duty of defendant company, part of their work. They dug the trench and should fill it up ; they knew to what extent and at what points they had laid bare or disturbed plaintiff's pipe, and it was their duty, unless in some way relieved of it, to replace the earth and leave the pipe in as good and safe condition as they found it. The learned judge charged to this effect, and added that he did not remember any evidence in the case that plaintiff had assumed that duty. This raises the only remaining question in the case, what was the extent of the agreement as to the performance or supervision of the work by the plaintiff where it was likely to affect their pipe. The learned judge construed it not to include the duty of replacing the earth

in the excavation after the vault was finished, and unless he was wrong in this, the charge is not open to objection. The agreement was not in writing and appears mainly in the testimony of Wilcox, the plaintiff's engineer. It is not desirable, nor would it serve any good purpose to go over this evidence in detail. The general effect of it as to the agreement is very fairly stated by appellants themselves in the argument in their paper-book, that the plaintiff company "should provide the skilled labor that would be necessary to provide for any changes in its lines made necessary by the excavation and constructive work of the traction company." Taking this as the appellant's own understanding of the contract, the work whose negligent performance caused the injury was not within it. No change was made necessary in the pipe from which the leak occurred. It was simply uncovered during the work, continued in its ordinary use all the time, and was covered up again without change when the work at that point was done. It was in this covering up again that the negligence occurred. Under no reasonable view of the contract could this be considered as part of the skilled labor made necessary by changes in the lines of pipe. Nor is there any evidence that either of the parties so regarded it at the time. The plaintiff's pipe on the south side of Wylie avenue was undermined by the same excavation, and the pipe was raised and carried over the vault by the plaintiff's skilled workmen in accordance with the agreement. The pipe on the north side of Wylie avenue was exposed at the same time as already stated, but no change was made in it, and the defendant's workmen filled in under and around it the earth which they had taken out, and neither party gave any indication of regarding the situation of the pipe or the work to be done about it, as calling for the skilled labor which plaintiff had agreed to supply.

Judgment affirmed.