508 A.2d 1247

**Patricia RIFF and Joseph Riff, Appellees,**

v.

**MORGAN PHARMACY, William T. Stack, M.D.**

**Appeal of MORGAN PHARMACY.**

Superior Court of Pennsylvania.

Argued Jan. 23, 1986.

Filed May 7, 1986.

22

John J. O'Brien, Jr., Philadelphia, for appellant.

Edward J. Schwabenland, Philadelphia, Thomas E. Mellon, Jr., Doylestown, for appellees.

Before OLSZEWSKI, TAMILIA and KELLY, JJ.

KELLY, Judge:

This case involves the appeal of the defendant pharmacy from a jury verdict in favor of the plaintiffs which found the defendant pharmacy jointly liable for injuries sustained by the plaintiffs as a result of the negligence of the physician and pharmacy in prescribing and dispensing a dangerous and potentially toxic prescription drug without instruction to the plaintiff regarding the uniformly accepted maximum safe dosage or warning as to the serious and life threatening side effects which result from exceeding the maximum safe dosage.

On appeal, the defendant, Morgan Pharmacy, raises fifteen separate issues in support of its contentions that the trial court erred in failing to grant the defendant's motion for judgment notwithstanding the verdict or in the alternative for new trial, and that the trial court abused its discretion in molding the verdict into a judgment. We cannot agree.

We have reviewed the voluminous record, the briefs of the parties, and the well reasoned opinion of the Honorable Michael E. Wallace. We find that the evidence was sufficient to sustain the verdict, that the trial court committed no errors of law requiring the grant of a new trial, and that the court did not abuse its discretion in molding the verdict.

Issues raised regarding legal causation, and joint tortfeasor status present issues of general significance to the public which compel further examination. Appellant's other arguments were adequately disposed of by the learned trial court, and we affirm on the basis of its opinion below.

■ The appellant contends that its acts and omissions do not constitute legal causation as the plaintiff relied solely upon the express instructions of Dr. Stack. We apply *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970), and find that legal causation is established where a pharmacy fails to exercise due diligence in its professional capacity and but for its failure to exercise due diligence the injuries to the plaintiffs would not have occurred.

The appellant contends that the trial court erred in finding that Morgan Pharmacy and Dr. Stack were joint tortfeasors. We apply *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979) and *Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381 (1982), and find that the defendants were in fact joint tortfeasors.

The appellant further contends that the indemity concepts of primary and secondary liability should be applied in the instant case. We distinguish *Builders Supply v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951), and other cases cited by the appellant and find that public policy precludes any application of the concept of primary and secondary liability to the facts of the instant case. The defendants were in fact joint tortfeasors.

The facts necessary to our decision and supported by the evidence were summarized by the learned trial court as follows:

On January 24, 1979, plaintiff Patricia Riff awoke with a migraine headache. Mrs. Riff went to her mother's home and the family physician, defendant William T. Stack, M.D., was summoned. Dr. Stack visited Mrs. Riff and provided a prescription for a package of 12 Cafergot suppositories, with written instructions thereon to insert one in the rectum "every four hours for headache". The

prescription did not contain any notation to authorize a refill.

... Upon obtaining the prescription Mrs. Riff's husband, Joseph Riff, immediately took it to defendant Morgan Pharmacy and obtained a package of twelve Cafergot suppositories. Morgan Pharmacy (Morgan) did not issue any additional instructions regarding the use or dangers of the drug. Morgan merely typed the words "insert one every 4 hours for headache" on the package label. Between the evening of January 24th and the morning of January 25th Mrs. Riff inserted a total of three or four Cafergot suppositories before obtaining relief.

In early April of 1979 Mrs. Riff suffered a second severe migraine headache. She inserted the Cafergot suppositories remaining from her first attack over the course of the next two days until her supply of the drug ran low and her husband took the empty package back to Morgan Pharmacy, which refilled the prescription. This migraine headache lasted 3½ to 4 days, during which time plaintiff used 15 to 17 supporitories by inserting one every four hours as instructed.

On August 27, 1979 Mrs. Riff suffered a third migraine headache. She discovered that she only had a few Cafergot suppositories remaining and once again Morgan Pharmacy refilled the prescription and provided her husband with an additional 12 suppositories. This headache lasted two days and Mrs. Riff used five or six suppositories. On August 31, 1979 Mrs. Riff began experiencing discomfort in her right foot. The next day she became concerned and walked to nearby Northeast Hospital where she was examined in the emergency room. Following a transfer in Pennsylvania Hospital for the performance of two arteriograms to determine whether she suffered from a blood clot it was determined that there were no clots but that her condition was the result of the toxic effects of an overdose of Cafergot. Mrs. Riff was initially advised by doctors that she was likely to die. That opinion was later revised and Mrs. Riff was advised that

it was likely that her leg would have to be amputated. As time passed her condition improved to a degree that amputation was deemed unnecessary, but her foot suffered permanent damage resulting from diminished blood circulation and nerve damage due to the Cafergot overdose. As a result her foot tends to drag and is in a constant state of discomfort. Testimony was offered as to the adverse consequences to her life and marriage. This condition will never improve.

(Trial Court Opinion at 1–5.)

The medical evidence established that Cafergot suppositories have beneficial effects in treating migraine headaches due to its action in constricting blood vessels if administered in the proper dose. The maximum dosage for Cafergot suppositories specified in the accepted medical literature is one suppository, with a permissible second suppository in one hour if necessary. The dose is not to exceed two per attack and in no event should the user administer in excess of five in one week.

The defendant physician, William T. Stack, M.D., testified that he recognized that Cafergot is a dangerous drug, that he was aware of the maximum dosage, and that his instructions should have included limitations as to maximum dosage. He testified that he did not authorize any refills and that he had no knowledge of any such refills.

The records of Morgan Pharmacy indicate that after the prescription was filled on January 24, 1979, it was refilled on four other occasions, February 16, 1979, August 27, 1979, August or September 31, 1979[1] and October 21, 1979. Morgan Pharmacy claimed at trial that Dr. Stack had telephoned on February 26, 1979, and authorized the refilling of the prescription five times. This fact was disputed at trial.[2]

1. The record shows an "8" with a "9" over it indicating the month, and the day is "31" (although there are only 30 days in September).

2. Both Mr. and Mrs. Riff testified that the second migraine did not occur until April, 1979 (Record at 744, and 978). Both Mr. and Mrs. Riff deny receiving the last two refills (Record at 773–774, 968). Dr. Stack denied authorizing any refills (Record at 438–39). Dr. Stack

Cafergot suppositories were sent to the pharmacy in a box which contains a corner attachment which contains among other things instructions as to the maximum safe dosage and warnings as to adverse side effects which may be caused by the drug. Exhibit P–28. The corner attachment was not on the box given to Mr. Riff. (Record at 747.) It is undisputed that the only instruction given to the plaintiff was to insert one Cafergot suppository every four hours for relief of her migraine headache.

The expert testimony established that Cafergot suppositories were a caution legend drug. Such drugs may only be dispensed upon a physicians prescription; the prescription may only provide for five refills and the prescription becomes invalid six months after the date of the prescription.

Experts testified that the toxic propensities of Cafergot suppositories were well known in the pharmacological community, and that instructions as to proper dosage and warnings are listed in the standard reference books which all pharmacists are required by law to maintain.[3] Pharmacists and a pharmacologist testified that a pharmacist who receives a prescription which has inadequate instructions as to maximum dosage has a duty to either ascertain if the patient is aware of the limitation concerning the use of the medication or to contact the prescribing physician to call the inadequacy of the prescription to the doctor's attention. Experts testified further that under the facts of this case a reasonably prudent pharmacist would have taken steps to correct the error of the prescribing physician.

Morgan Pharmacy raises fifteen arguments in support of its appeal; however, we affirm on the basis of the opinion

specifically denied the alleged telephone authorization and the issuance of a *new* prescription on August 27, 1979 (Record at 449).

**3.** Title 49, § 27.14, mandates that all pharmacists maintain copies of the latest editions of the *National Formulary* and the *United States Pharmacopoeia.* In addition, they must have a reference publication such as the *Physician's Desk Reference.* All three of these volumes contain a listing for Cafergot suppositories, along with the proper dosage for them. The recommended dosage according to all three sources is two suppositories per attack, and not to exceed five per week. *See also* 63 Pa.S.A. § 390–4(a)(1).

of the learned trial court and discuss only the issues of legal causation, and joint tortfeasor status which involve issues of general public interest.

Initially we must examine the premise upon which the appellant's arguments are based. The appellant states:

... it was Dr. Stack's function and duty to determine the number of suppositories to be used by the wife-plaintiff and it was the use that caused the injury. With respect to Morgan Pharmacy, its function and duty was to supply the medication; the supply did not cause the harm. Thus, Dr. Stack's conduct was a substantial factor or the legal cause of the harm to the wife-plaintiff. Conversely, the mere supplying of the medication by Morgan Pharmacy as opposed to its use is not a substantial factor or legal cause of the harm to wife-plaintiff. *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970).

(Appellant's Brief at 11.)

The statement by the appellant that "its function and duty was to supply the medication" is incorrect, and yet it is quite illustrative of the appellant's disregard for the professional duty owed the plaintiff by the defendant pharmacy. The appellant would seem to argue that a pharmacy is no more than a warehouse for drugs and that a pharmacist has no more responsibility than a shipping clerk who must dutifully and *unquestioningly* obey the written orders of omniscient physicians. Such is not the case.

The practice of pharmacology is a regulated profession in Pennsylvania. Pharmacists are required to hold a degree in pharmachology from a school accredited by the American Council of Pharmaceutical Education, to complete an internship, and to pass a comprehensive examination administered by the State Board of Pharmacy. 63 Pa.S.A. § 390–3. Pharmacies are also licensed in Pennsylvania. 63 Pa.S.A. § 390–4. The purpose of the Pharmacy Act was to "regulate the compounding of physician's prescriptions, preparing drugs, and dispensing them, or other products of an apothocaries calling, *Boyd v. Frenchee*, 37 F.Supp. 306 (D.C.N.Y. 1941); the Act was remedial in nature and belonged to that

class of legislation which had for its objective the protection of the health and safety of the public. *Commonwealth v. Dimas*, 170 Pa.Super. 5, 84 A.2d 218 (1951). Under 63 Pa.S.A. § 390–6(h)(1) the State Board of Pharmacy is empowered and invested with the duty to regulate the practice of pharmacy.

In determining the degree of skill required of a physician or other professional medical personnel, Pennsylvania law does not demand extraordinary skill, but, rather, that degree which ordinarily characterizes the profession; in judging this degree of skill, regard is to be had to the advanced state of the profession at the time. *Titchell v. United States*, 681 F.2d 165 (3rd Cir.1982); *see Baur v. Mesta Mach. Co.*, 405 Pa. 617, 176 A.2d 684 (1962).

■ A pharmacist is a professional. In the performance of his professional duties he will be held to the standard of care, skill, intelligence which ordinarily characterizes the profession. Public policy requires that pharmacists who prepare and dispense drugs and medicines for use in the human body must be held responsible for the failure to exercise the degree of care and vigilance commensurate with the harm which would be likely to result from relaxing it. See: *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971).

■ The appellant argues that his acts or omissions do not constitute a legal cause of the plaintiff's injuries as the plaintiff relied solely upon the express instructions of Dr. Stack. The appellant misapprehends the law regarding causation. Causation does not require reliance.

The appellant cites *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970), in support of his proposition. *Whitner* does not in fact support this contention. Indeed, *Whitner* provides:

That if the harmful result would have come about *even had the actor not been negligent*, the negligent conduct,

even though contributory, is not a substantial factor, hence no legal causation, and no liability.

437 Pa. at 456–57, 263 A.2d at 984 (emphasis added).

In the instant case the pharmacy had a legal duty to exercise due care and diligence in the performance of its professional duties. Sufficient credible evidence was presented to establish that Morgan Pharmacy breached that duty by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff. But for this negligence the error would have been corrected and the injuries would not have occurred. Causation was established.

The appellant next contends that Morgan Pharmacy and Dr. Stack were not joint tortfeasors. Consequently, the appellant argues that the release of Dr. Stack by the plaintiffs should act as a release of Morgan Pharmacy under the holding in *Koller v. Pennsylvania R. Co.*, 351 Pa. 60, 40 A.2d 89 (1944). *Koller* does not apply.

The issue of whether liability is capable of being apportioned between the plaintiffs, of whether the defendants are separate or joint-tortfeasors, is a question of law for the court and not of fact for the jury. *See Voyles, supra.;* Restatement (Second) Torts § 434(1)(b). In *Lasprogata, supra.*, this Court explained:

> to be a joint tortfeasor the parties must either act together in committing the wrong, *or their acts, if independent of each other must unite in causing a single injury.*

263 Pa.Superior Ct. at 179, n. 4, 397 A.2d at 805, n. 4 (emphasis added).

In *Voyles, supra.*, this Court indicated that the following factors should be considered in determining whether liability was joint or separate:

> ... the existence of a same or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; ... responsibility of the defendents for the same *injuria* as

distinguished from *damnum.* Prosser, Law of Torts, 46, n. 2 (4th Ed.1971) . . .

295 Pa.Superior Ct. at 130–31, 441 A.2d at 383.

Applying *Lasprogata* and *Voyles* to the facts of the instant case we find that the trial court was correct in determining that liability was joint rather than separate. Dr. Stack had a duty to exercise due care in prescribing the Cafergot, Morgan Pharmacy had a duty of due care in dispensing the Cafergot. Both were negligent in failing to exercise the degree of care which ordinarily characterizes their respective professions. The proof of the negligence as to each of the defendants was essentially the same: that Cafergot was well known as a potentially toxic drug and that the instructions written on the prescription were inadequate. The duty and the breach are similar. The injury caused by the breach of their respective duties is single and indivisible. If either of the defendants had not been negligent, none of the injury would have occured. Each is responsible for the entire *injuria* as well as *damnum.*

■ The appellant further contends that the concept of primary and secondary liability applies in the instant case as Morgan Pharmacy "may be considered as a conduit through which the subject medication was supplied for use pursuant to Stack's specific instruciton." Appellant's Brief at 14. The appellant cites *Builders Supply v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951), in support of this argument.

In *Builders Supply,* our Supreme Court stated:

[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law, *or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible....*

366 Pa. at 328, 77 A.2d at 371. The appellant seeks to have this Court apply the concept of secondary liability to the facts of the instant case on the basis of the underlined

portion of the quoted passage. The appellant's reliance upon *Builders Supply*, however, is misplaced.

The appellant seeks to expand the dicta of *Builders Supply* beyond its logical application. The Court went on to illustrate the underlined text with two cases, *Philadelphia Company v. Central Traction Co.*, 165 Pa. 456, 30 A. 934 (1895) and *Orth v. Consumers Gas Co.*, 280 Pa. 118, 124 A. 296 (1924). Both of these cases involved the secondary liability of property owners for injuries resulting from hazardous condition on their property which were created by the negligence of other persons.

The appellant also cites *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969); *Tromza v. Tecumseh Products Co.*, 378 F.2d 601 (3rd Cir.1967); and *Sochanski v. Sears Roebuck Co.*, 689 F.2d 45 (3rd Cir.1982). Each of these cases involves an indemnity claim based upon vertrical responsibility of a parts manufacturer for the introduction of a defective part into the stream of commerce.[4]

Neither *Builders Supply* nor any of the other cases cited by the appellant supports application of indenmification principles in the instant case. Unlike the landowners in *Philadelphia Company* and *Orth*, Morgan Pharmacy's negligence was active, not passive. Morgan Pharmacy's pharmacists undertook the responsibility to perform professional services with the degree of care, skill, and intelligence which ordinarily characterizes the practice of pharmacology. Expert testimony established that the "reasonable pharmacist" has an affirmative duty to read the prescription and to be aware of patent inadequacies in the instructions as to maximum safe dosage of known toxic drugs and medicines. Morgan Pharmacy's pharmacists failed in that duty.

Fallibility is a condition of the human existence. Doctors, like other mortals, will from time to time err through

---

4. *Burgage* involved the claim of a boiler manufacturer against a valve manufacturer; *Tromza* involved claims asserted by a refrigerator manufacturer against a compressor manufacturer; and *Sochanski* involved the claim of a tire retailer against a tire manufacturer.

ignorance or inadvertance. An error in the practice of medicine can be fatal; and so it is reasonable that the medical community including physicians, pharmacists, anesthesiologists, nurses and support staff have established professional standards which require vigilance not only with respect to primary functions, but also regarding the acts and ommissions of the other professionals and support personnel in the health care team. Each has an affirmative duty to be, to a limited extent, his brother's keeper.

It is not for this Court to delineate the precise bounds of a medical professional's responsibilities. It is for the medical community to determine what degree of vigilance is required in this respect. They are in the best position to balance the interests and prescribe a standard of conduct which is consistant with the best interests of the patient.

In the instant case the testimony of the medical experts, both physicians and pharmacists, established that the conduct of Morgan Pharmacy's pharmacists fell below the level of reasonable conduct in the practice of pharmacy. The jury heard the evidence and found that Morgan Pharmacy was not only negligent but *more negligent* that Dr. Stack.

The equity considerations which are the basis of an indemnity claim are not present in the instant case. There is no issue of liability without fault. Moreover, public policy requires that medical professionals be held to the highest degree of legal responsibility for the failure to perform their respective professional duties with the degree of care, skill, and intelligence which ordinarily characterize the profession. Application of indemnity principles would have the affect of judicially repealing the standards of professional conduct which expert testimony established in this case.

Such an intrusion upon the progress and development of professional standards in the medical community is unwarranted and unwise. If the consensus of the medical community is that a safety net of overlapping responsibilities is necessary to serve the best interests of patients, it is not for the judiciary to dismantle the safety net and leave patients at the peril of one man's human frailty. Reason and public

policy compel rejection of any attempt to apply indemnification principles to the facts of the instant case.

For the foregoing reasons the judgment of the learned trial court is affirmed.