## Bielanin v. A & H Equipment Company

*Andrew J. Conner,* for plaintiff.

*James T. Marnen,* for defendant A & H Equipment Company.

*David B. White,* for additional defendant Elgin Leach Corporation.

*John M. Wolford,* for additional defendant Leach Company.

JIULANTE, *J.,* September 1, 1987 — This matter comes before the court on the motion of defendant, A & H Equipment Company, for summary judgment. We find that plaintiff, Patricia Bielanin, does not have a claim against A & H Equipment, but that the defendant is not entitled to judgment as a matter of law against plaintiff, Arthur Bielanin.

. On November 26, 1979, plaintiff Arthur Bielanin, while in the course of his employment as a sanitation worker for the City of Erie, suffered an injury to his left hand when it was caught in the packer mechanism of the rear of the garbage compactor. The compactor had been manufactured by Leach Company, additional defendant, marketed by Elgin Leach Corporation, additional defendant, and sup-

plied to the City of Erie by defendant, A & H Equipment Company.

In July 1975, the City of Erie had solicited bids for nine garbage compactors and provided specifications for manufacture of the compactors to various sellers and suppliers. Defendant was the successful bidder and on October 1, 1975, defendant sent purchase orders to Elgin Leach Corporation, who in turn, forwarded the orders to the manufacturer, Leach Company.

It is undisputed that the orders sent by defendant to Elgin Leach Corporation and by Elgin Leach Corporation to Leach Company specified that no safety doors were to be installed on the compactors, although plaintiff and defendant offer different explanations as to why the doors were not ordered. It is also undisputed that the compactors left the manufacturer without safety doors. On February 3, 1976, a representative of defendant inspected and serviced the compactors in Erie, and thereafter, the City of Erie took possession of the compactors without rear safety doors having been installed.

Plaintiff Arthur Bielanin filed an action against A & H Equipment Company on March 27, 1981, alleging that A & H Equipment Company sold a defective product which proximately caused injury to plaintiff and further alleging negligence in selling the compactor without proper warning or instruction as to its unsafe condition. Plaintiff Patricia Bielanin brings a claim for loss of consortium as a result of the injuries suffered by her husband. Defendant then joined Elgin Leach Corporation and Leach Company as additional defendants. Plaintiffs released the additional defendants from further liability on November 17, 1986. The defendant now contends that the release of the additional defen-

158

dants in effect releases it from further liability and it is therefore entitled to judgment as a matter of law.

A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1935(b). In determining whether the moving party has met its burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). Summary judgment should be granted only in the clearest case, where the right to judgment is clear and free from doubt. *Id.*

## Release of Additional Defendants

Although not referred to or relied upon by either party, the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S. §8321 et seq. (Purdon 1982), is relevant. Section 8326 of the act states:

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claims shall be reduced if greater than the consideration paid." 42 Pa. C.S. §8326 (Purdon 1982).

Section 8322 of the act defines joint tortfeasor as two or more persons jointly or severally liable in tort for the same injury to persons or property. 42 Pa. C.S. §8322.

The release from plaintiffs to additional defen-

dants provides, "No claims or demands are being released which we may have against any other person or parties on account of the accident of November 26, 1979." Since the release specifically provides that no other tortfeasors are being released from liability, we must determine whether defendant and additional defendants are joint tortfeasors to whom the act would apply.

The Pennsylvania Supreme Court discussed at length the concept of primary and secondary liability in *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951), a case which arose from an accident in which plaintiff, in attempting to avoid a collision with one vehicle, swerved into the path of an oncoming vehicle and collided with it. Plaintiff eventually paid a judgment entered against it and sought indemnification from the driver of the vehicle which plaintiff had avoided. After reviewing the case law, the court said:

"[T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the oth-

er." 366 Pa. at 328, 77 A.2d at 367 (1951). (emphasis in original)

The *Builders Supply* court and subsequent cases have recognized that the concepts of indemnity and contribution have developed in tort law to fairly distribute the costs of committing a tort by placing greater responsibility on the tortfeasor who was in a better position to prevent the harm from occurring. Liability which arises by operation of law alone may result in an award against a party who could not have prevented the harm; therefore, that party is entitled to indemnification by the wrongdoer. Likewise, if two persons or parties act together to cause injury to another, they are each required to contribute to the payment of damages resulting from their wrongful acts.

The effect of the release of one tortfeasor upon the liability of another was also the issue in *Harka v. Nabati,* 337 Pa. Super. 617, 487 A.2d 432 (1985). There plaintiff was injured in a vehicular accident and subsequently received medical treatment. In two separate actions, plaintiff sued the driver and the treating physician, who brought the driver in as an additional defendant. When plaintiff settled with and released the driver from liability in the first suit, the driver moved for summary judgment in the second suit. The physician opposed the entry of judgment for the driver, claiming a right to contribution.

The Superior Court stated the issue as being whether liability for the harm to plaintiff could be apportioned or whether defendants in the two suits were in fact joint tortfeasors and used the following analysis:

"In determining whether the harm to plaintiff is capable of apportionment, that is, whether defendants are separate or joint tortfeasors, courts consid-

er several factors: the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; indivisible nature of the injury to plaintiff; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential, responsibility of defendants for the same injuria as distinguished from damnum. 337 Pa. Super. at 662, 487 A.2d at 434 (1985), quoting *Voyles v. Corwin,* 295 Pa. Super. at 130, 441 A.2d at 383 (1982).

In determining that defendants in *Harka* were not jointly liable, the Superior Court reasoned that the duties owed by a driver and a physician are different, their respective acts did not result in the same injury to plaintiff, nor would the same facts be presented in support of the two causes of action. In addition, neither defendant had an opportunity to guard against the acts of the other. Since the separate and distinct acts of the two defendants caused separate and distinct injuries to plaintiff, neither defendant was entitled to contribution from the other.

The principles of indemnity and contribution are also recognized in products liability law, where all suppliers of a defective product are potentially liable for the injuries suffered by the ultimate user of the product. *Walasavage v. Marinelli,* 334 Pa. Super. 396, 483 A.2d 509 (1984). This policy, coupled with indemnity and contribution, ensures a source of compensation to the injured party, places the burden of injury on those parties who have a better opportunity to control the defect, and shifts ultimate liability on the parties in the chain of distribution who can best detect, control, or prevent the defect. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83,

337 A.2d 893 (1975); *Burch v. Sears, Roebuck and Co.*, 320 Pa. Super. 444, 467 A.2d 615 (1983).

Analysis of primary versus secondary liability in section 402A cases requires an examination of each party's contact with the product in the chain of distribution and the opportunities for discovery of prevention of the defect:

"When adapting these standards to strict liability cases . . . our courts look to the facts rather than the form of liability alone, . . . and "view trade relations realistically rather than mythically" . . . Thus, in determining who may be "primarily responsible" and required to indemnify in a products liability case, our courts have evaluated the facts in light of products liability policies, particularly by focusing on opportunity to discover or actual knowledge of the defective condition and on the relative burdens of correcting or preventing the defect . . ." *Burch v. Sears, Roebuck & Co.*, 320 Pa. Super. at 458-9, 467 A.2d at 622-3 (1983). (citations omitted)

According to the foregoing principles, defendant's liability in the present case may be found because as a supplier of a defective product, it had a duty to either prevent the defect or warn against its use. Under a negligence theory, it may be found that defendant did not exercise due care in placing into the stream of commerce garbage compactors without safety doors. Defendant was admittedly aware of the defect and had at least two opportunities to prevent it or warn of its existence. A jury could find that the compactor which caused plaintiff's injury was defective, thus imposing strict liability on defendant, and could also find that defendant's actions in supplying the compactor were unreasonable.

Assuming that defendant is found to have committed a tort, its liability is unquestionably joint with

that of the additional defendants. Each of them owed a duty to plaintiff to supply a non-defective product reasonably safe for its intended use. The record establishes that defendant was not a mere conduit by which it may be insulated from section 402A liability. See *Riff v. Morgan,* 353 Pa. Super. 21, 508 A.2d 1247 (1986). Defendant was in a position to prevent distribution of a defective product or warn the user against the risks inherent in its use. The actions of defendant and additional defendants led to the use of the same defective product and the same injury by the user. Therefore, we find that defendant and additional defendants are joint tortfeasors and that the release given to the additional defendants does not operate to extinguish the liability of defendant.

## Consortium Claim

Defendant also seeks judgment in its favor against plaintiff Patricia Bielanin on her claim for loss of consortium. It is undisputed that the accident occurred on November 26, 1979 and that the parties were married on June 28, 1980; thus, the injury predated the marriage. Pennsylvania courts have uniformly held that an award for loss of consortium will not be permitted unless legal marriage existed at the time of the injury. *Saternow v. Byknich,* 31 Pa. D.&C. 3d (1983). Since Patricia Bielanin was not married to Arthur Bielanin at the time of the injury, she has no claim against defendant and defendant's motion for summary judgment as to Patricia Bielanin will be granted.

## Punitive Damages

Defendant next contends that plaintiffs' stated intention in the pretrial narrative to claim punitive damages is, in effect, an amendment to the original

complaint which is barred by the applicable statute of limitations.* Plaintiffs do not dispute that the applicable statute has run but argue that they are merely seeking to enlarge the ad damnum clause of the complaint without charging the factual averments upon which their claim is based.

Pursuant to section 908 of the Restatement (Second) of Torts (1979), "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." This court has previously held that a party may recover punitive damages in a product case if that party can show that a supplier has knowingly placed defective goods on the market or has done so with reckless disregard for the safety of the ultimate user of the goods. *Netzler v. Kelly Springfield Tires*, 67 Erie Leg. J. 29 (1984); see also, *Martin v. Johns-Manville Corp.;* 508 Pa. 154, 494 A.2d 1088 (1985).

Plaintiffs assert that the basis for recovery of punitive damages will be evidence they may present at trial regarding an alleged "kickback" scheme between defendant and a City of Erie official, Theodore Kania. Plaintiffs' theory is that defendant paid several thousand dollars to Theodore Kania in return for his having recommended, in his official capacity as Bureau Chief of the City of Erie, that defendant be awarded the contract for the compactors. Defendant supposedly generated the funds paid to Kania by deleting safety doors and rear bumpers on the compactors, even though defendant was paid for these items. Plaintiffs further contend that defendant agreed to an arrangement whereby Kania,

---

* By request of plaintiffs, the court will consider the pretrial narrative to be a motion to amend the complaint to include a claim for punitive damages.

through his independent welding business, would supply modified rear doors to the compactors despite the fact that defendant knew or should have known that Kania Welding was not equipped to perform the work. Whether this evidence will be admissible is not presently before the court. However, if it is properly admitted at trial, a factfinder could conclude that the actions of defendant in knowingly supplying compactors without safety doors was outrageous, wanton, or in reckless disregard of the rights of the user of the product, thus supporting a claim for punitive damages.

Pa.R.C.P. 1033 permits amendment of a pleading to conform to the evidence and the right to amend is to be liberally construed absent prejudice to the adverse party. *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo Inc.*, 326 Pa. Super. 509, 474 A.2d 605 (1984) app. all., 505 Pa. 601, 482 A.2d 968, modified other grounds 510 Pa. 1, 507 A.2d 1 (1986).

In the present case, plaintiffs served defendant with interrogatories as early as December 1981 which asked defendant to name the City of Erie officials involved in the solicitation of bids for the compactors. Theodore Kania was one of those named in the City of Erie officials involved in the solicitation of bids for the compactors. Theodore Kania was one of those named in defendant's answers. In December 1982, Leach Company, as an additional defendant, sent interrogatores to defendant regarding its involvement with Kania Welding Service and arrangements to have doors installed on the compactors. Defendant was aware, by virtue of these discovery efforts, of the various parties' interest in its transactions with Theodore Kania Welding. Finally, plaintiffs' pretrial narrative, wherein they state their

intention to claim punitive damages, was filed on February 21, 1985.

Given the length of time which has passed during the pleading stage it does not appear that defendant will be taken by surprise at trial on this issue. Defendant has had ample time to prepare a response to allegations that it acted wantonly or with reckless disregard in agreeing to have the safety doors installed by a third party.

In light of the foregoing, defendant's motion for summary judgment on plaintiffs' claim for punitive damages will be denied; however, the court will reserve judgment on plaintiffs' motion to amend the ad damnum clause until the time of trial.

### ORDER

And now, September 1, 1987, upon consideration of the motion for summary judgment filed on behalf of defendant, A & H Equipment Company and after argument by counsel, it is hereby ordered, adjudged and decreed that:

(1) Defendant's motion for judgment in its favor and against plaintiff Patricia Bielanin on count II and count IV of the complaint is hereby granted;

(2) Defendant's motion for judgment in its favor as to the claim for punitive damages is hereby denied; and

(3) Defendant's motion for judgment in its favor and against plaintiff Arthur Bielanin is hereby denied.