## Saliba v. Uniontown Hospital

C.P. of Fayette County, no. 1613 of 1995 G.D.

*Phyllis A. Jin,* for plaintiff.
*Howard A. Chajson,* for defendant.

SOLOMON, *J.,* November 29, 2001—Before the court are the motions for summary judgment filed by the defendants, Thomas Kearns M.D. and Cesar Noche M.D., who are emergency room physicians.

## BACKGROUND

On August 19, 1994, Gabrielle Saliba, a 2-year-old with a history of medical problems, was seen at Uniontown Hospital by the defendants. She was diagnosed with serum sickness, prescribed Tylenol and Benadryl, and discharged. The next day, Gabrielle was examined at Children's Hospital, where she was once again diagnosed with serum sickness and discharged. Two days later, on August 22, 1994, the child was rushed to Uniontown Hospital where she went into full cardiac arrest and died.

Thereafter, her parents instituted this action alleging that the defendants, and others, provided negligent care and treatment. In the course of discovery, the plaintiffs

have offered the expert testimony of two nurses, a pharmacist, and a physician.

In response, these defendants have filed a motion for summary judgment, contending that these witnesses do not qualify as medical experts and are, therefore, precluded from testifying as to the medical malpractice of the defendants. Further, the defendants contend that the reports of the physician are legally insufficient to set forth a prima facie case of medical malpractice against these defendants. Thus, without expert testimony, the plaintiffs are unable to establish a prima facie case of medical malpractice, entitling the defendants to summary judgment.

## DISCUSSION

Motions for summary judgment are governed by Pa.R.C.P. 1035.2 which provides that:

"After the relevant pleadings are closed, but within such times as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim after relevant discovery has been completed. *Miller v. Sacred Heart Hospital,* 753 A.2d 829 (Pa. Super. 2000). It is not the function of the court ruling on a motion for

summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Commonwealth, Pennsylvania Securities Commission,* 134 Pa. Commw. 494, 579 A.2d 1358 (1990). However, the court must examine the record in the light most favorable to the non-moving party, *Sebelin v. Yamaha Motor Corp. USA,* 705 A.2d 904 (Pa. Super. 1998), and must resolve all doubt as to the existence of a genuine issue of material fact against the moving party. *Swartley v. Hoffner,* 734 A.2d 915 (Pa. Super. 1999); *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25 (Pa. Super. 2000), *allocatur granted in part,* 563 Pa. 125, 758 A.2d 166 (2000), *aff'd,* 564 Pa. 264, 767 A.2d 548 (2001). Only then, if the record shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, may summary judgment be invoked. *Young v. Eastern Engineering and Elevator Co.,* 381 Pa. Super. 428, 554 A.2d 77 (1989).

Instantly, to establish a prima facie case of malpractice, the plaintiffs must establish (1) a duty owed by the physician to the patient; (2) a breach of duty from the physician to the patient; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of harm. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). Generally, in order to satisfy their burden, the plaintiffs must introduce expert testimony to show that the acts of the physician deviated from good and acceptable medical standards. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 595, 417 A.2d 196, 199 (1980); *Rauch v. Mike-Mayer,* 783 A.2d 815, available at 2001 WL 1041847 (Pa. Super. 2001). Such expert witness is re-

quired to testify, "to a reasonable degree of *medical* certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the *proximate cause* of the harm." *Mitzelfelt v. Kamrin, supra* at 62, 584 A.2d at 892. (emphasis added) "This requirement stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances." *Brannan v. Lankenau Hospital, supra,* 490 Pa. at 595-96, 417 A.2d at 199-200, citing, *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971).

The decision to permit a witness to testify as an expert rests within the discretion of the trial court. *Montgomery v. South Philadelphia Medical Group Inc.,* 441 Pa. Super. 146, 656 A.2d 1358 (1995). Pursuant to Pennsylvania's liberal standard, witnesses may testify as experts if they possess knowledge outside the ordinary reach, and offer testimony that could assist the trier of fact. *Id.* Further, to qualify as an expert, the witness need not possess all of the knowledge on a subject; rather, the witness should have a reasonable pretension to specialized knowledge. *Id.* What weight is to be assigned to the testimony of the expert lies within the province of the jury. *Id.*

With regard to medicine, only specialists in the particular field of medicine will be allowed to testify as to the standard of care in that specialty. *Dambacher by Dambacher v. Mallis,* 336 Pa. Super. 22, 485 A.2d 408 (1984). However, all doctors have a general knowledge of the human body. *Id.* In limited cases, where the specialties overlap, a doctor in another specialty will be allowed to testify as an expert. *McDaniel v. Merck, Sharp*

*& Dohme,* 367 Pa. Super. 600, 533 A.2d 436 (1987). The specific training and experience of a potential expert witness can be explored on the record so that the trial court may ascertain whether the witness qualifies as an expert in the field at issue. *Rauch v. Mike-Mayer, supra.*

With these tenets to guide us, we will consider the motion for summary judgment with respect to each of the proffered witnesses.

The first of these witnesses are two registered nurses, Jane Szezerbienski and Charlotte Wade. With regard to nurses, Pennsylvania Nursing Law expressly stipulates that nursing shall not include the acts of medical diagnosis or prescription of medical therapeutic or corrective measures. 63 P.S. §212(1). A nurse is not qualified to testify to a reasonable degree of medical certainty that the acts of a physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm. *Flanagan v. Labe,* 446 Pa. Super. 107, 666 A.2d 333, (1995), *aff'd,* 547 Pa. 254, 690 A.2d 183 (1997). Thus, here, as in *Flanagan,* these nurses are not qualified to proffer expert testimony as to the medical diagnosis and treatment rendered by these physicians.

We now turn to the proffered pharmacist, Cheryl L. Farine. Pharmacists are medical professionals, and public policy requires that pharmacists who prepare and dispense drugs and medicines for use in the human body are held to the standard of care, skill and intelligence which ordinarily characterizes the profession. *Riff v. Morgan Pharmacy,* 353 Pa. Super. 21, 508 A.2d 1247 (1986). "An error in the practice of medicine can be fa-

tal; and so it is reasonable that the medical community including physicians, pharmacists . . . have established professional standards which require vigilance not only with respect to primary functions, but also regarding the acts and omissions of the other professionals and support personnel in the health care team. Each has an affirmative duty to be, to a limited extent, his brother's keeper." *Id.* at 33, 508 A.2d at 1253.

As noted, *supra,* the standard for qualification of an expert witness is a liberal one. See also, *Miller v. Brass Rail Tavern Inc.,* 541 Pa. 474, 664 A.2d 525 (1995). In *Miller,* our Supreme Court held that a person without a medical degree could be qualified to give a medical opinion which would have to be delivered by an expert medical witness. *Id.*

"The test to be applied when qualifying an expert witness is whether the witness has *any* reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." *Miller,* 541 Pa. at 480-81, 664 A.2d at 528. (emphasis in original) It is not necessary that an expert be a licensed medical practitioner to testify with respect to organic matters, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience. *Id.*

"Hence, our Supreme Court has permitted an otherwise qualified nonmedical expert to give a medical opinion so long as the expert witness has sufficient specialized knowledge to aid the jury in its factual quest." *McClain v. Welker,* 761 A.2d 155, 157 (Pa. Super. 2000).

Such an expert may even render an opinion as to causation if an adequate record is provided. *Id.*

While Cheryl L. Farine is not a physician, as a pharmacist, she is a medical professional, and has a duty to familiarize herself with the possible side effects of prescribed medications. *Riff v. Morgan Pharmacy, supra.* Merely because she lacks formal medical training does not, in and of itself, disqualify her as an expert. *Miller v. Brass Rail Tavern Inc., supra.* If it is established on the record that she has any reasonable pretension to specialized knowledge on the subject under investigation, the court may permit her to testify as an expert and offer medical opinions. If so, the trier of fact will determine the weight to be given to such testimony.

Lastly, the defendants contend that Thomas Gullo M.D., should not be permitted to testify as an expert witness in this case. The argument made on this issue is two-pronged. The first prong is that Dr. Gullo, as an obstetrician/gynecologist is not competent to testify as to the standard of care applicable to an emergency room physician, and the second is that the reports of Dr. Gullo are not legally sufficient to establish a prima facie case of medical malpractice. We will first address the reports authored by Dr. Gullo.

Dr. Gullo authored two reports, the first being handwritten. The defendants argue that the reports are not legally sufficient to establish, within a reasonable degree of medical certainty, that the defendants deviated from acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.

In his handwritten report, Dr. Gullo opined that the "child's death could have been prevented had she been

hospitalized on August 19, 1994, when the diagnosis of serum sickness was made." His typewritten report sets forth that the "child should have been admitted to the hospital for aggressive treatment when the diagnosis of serum sickness was made."

Experts are not required to use "magic words" when expressing their opinions. *Welsh v. Bulger,* 548 Pa. 504, 514, 698 A.2d 581, 586 (1997). Instead, we look at the substance of the testimony presented. *Id.* Thus, there is no need for expert reports to contain a formulaic incantation as to identification and fault attribution. *Rauch, supra.* What is necessary is that the clear import of the reports implicates the defendants. *Id.*

Reading these reports in the light most favorable to the plaintiffs as the non-moving parties, and resolving all doubt in their favor, the clear import is that the defendants breached the standard of care when they failed to admit the child to the hospital on the day that they examined her and, had they done so, her death could have been prevented. Thus, the reports are sufficient, at this stage, to support a prima facie case of negligence against these defendants predicated on medical malpractice.

Finally, we address the issue of whether an obstetrician/gynecologist is capable of rendering an opinion as to the standard of care applicable to an emergency room physician.

Generally, medical specialists in one area are not permitted to testify as an expert in another medical area without education or experience in that particular field. *Dambacher, supra.* However, in the field of medicine, specialties sometimes overlap and a physician may be knowledgeable in more than one field. *Bindschusz v.*

*Phillips*, 771 A.2d 803 (Pa. Super. 2001). Where specialties overlap in practice, or where the specialist has experience in another related medical field, an expert in one area of medicine may be qualified to address other areas of specialization. *McDaniel, supra.*

As set forth, *supra,* the standard of qualification is a liberal one, and all doctors have a general knowledge of the human body. *Dambacher, supra.* Furthermore, there is no matter of record which indicates that Dr. Gullo is unqualified to express an expert medical opinion concerning the standards pertinent to the treatment of Gabrielle. See *Rauch, supra.* Since we view the record in favor of the non-moving parties, and resolve all doubts against the moving party, at this stage of the proceedings we must resolve any question as to Dr. Gullo's qualification to speak as an expert in plaintiffs' favor.

Wherefore, for the reasons set forth in this opinion, we will enter the following order denying the motion for summary judgment filed by the defendants.

## ORDER

And now, November 29, 2001, upon the foregoing opinion, the motion for summary judgment filed by the defendants, Thomas Kearns M.D. and Cesar Noche M.D., is ordered denied.