MARY T. FERGUSON, ADMINISTRATRIX OF THE ESTATE OF CHARLES W. FERGUSON, JR., DECEASED, PLAINTIFF v. MARGARET WILLIAMS AND RING DRUG COMPANY D/B/A BOBBITT'S PROFESSIONAL PHARMACY, DEFENDANTS

No. 9021SC393

(Filed 15 January 1991)

1. **Physicians, Surgeons and Allied Professions § 12.2 (NCI3d) — liability of pharmacy and pharmacist — anaphylactic reaction — directed verdict for defendants improper**

The trial court erred by granting defendants' motion for a directed verdict in an action against a pharmacist and a pharmacy arising from a fatal anaphylactic reaction where it is undisputed that the pharmacist knew decedent was allergic to Percodan, knew that Percodan contains aspirin, knew that decedent had suffered an anaphylactic reaction to Percodan, and plaintiff's three pharmacy experts testified that this information was sufficient to have alerted the pharmacist that decedent might suffer from a cross-sensitivity with Indocin, the prescribed medicine. Whether or not the pharmacist owed decedent a duty depends on what was said during the conversation that occurred while she filled the prescription; the only testimony of that conversation is from defendant herself; and witness credibility is a determination made by a jury.

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 54, 60.**

2. **Physicians, Surgeons and Allied Professions § 12.2 (NCI3d) — liability of pharmacy and pharmacist — contributory negligence**

A directed verdict for defendants on the basis of decedent's contributory negligence was improper where decedent died from an anaphylactic reaction after taking Indocin where, although decedent might have averted this tragedy with a more explicit explanation of his drug allergies, three expert witnesses testified that decedent apparently gave the pharmacist enough information to alert her that decedent might have a severe allergic reaction to Indocin.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 64.**

**3. Physicians, Surgeons and Allied Professions § 12.2 (NCI3d) — liability of pharmacy and pharmacist — anaphylactic reaction — causation**

A directed verdict for defendants on the grounds of causation in an action against a pharmacy and pharmacist arising from decedent's fatal anaphylactic reaction was inappropriate where decedent told a friend to call an ambulance because he thought he was dying; decedent handed the friend a bottle containing Indocin capsules and told him to give it to the doctor at the hospital because it contained medication he had taken that morning; it was discovered later that the bottle contained forty-nine capsules while the prescription called for fifty capsules; decedent was allergic to a number of allergens; no one saw decedent take the Indocin; an autopsy examination of decedent's stomach contents revealed only fragments of a white tablet which was not Indocin; no traces of a pink and white capsule were found; Indocin was a pink and white capsule; no trace of Indocin was discovered in decedent's urine; the autopsy evidence was uncontroverted that decedent died from a severe anaphylactic reaction caused by an allergen; and a toxicologist testified that the Indocin capsule would have been absorbed into the stomach lining and then into the bloodstream and that, given the timing of events, he would not have expected to see any Indocin in decedent's urine.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 56.**

**4. Evidence § 33.2 (NCI3d) — liability of pharmacy and pharmacist for prescribed medication — testimony of emergency room physician — decedent's statements repeated by third party — not admissible**

The trial court did not err in a negligence action against a pharmacist and pharmacy arising from a fatal anaphylactic reaction by excluding portions of the deposition testimony of the emergency room physician where the contested statements were all remarks made by decedent to a third party and then to the physician and constituted hearsay within hearsay.

**Am Jur 2d, Depositions and Discovery § 176; Evidence § 683.**

5. **Evidence § 34.5 (NCI3d) — liability of pharmacy and pharmacist — dying declaration — statements of love and affection — not admissible**

The trial court did not err in a negligence action against a pharmacist and pharmacy arising from a fatal anaphylactic reaction by excluding statements made to a third party as decedent was dying and a letter from decedent because, even though the statement and letter constituted a dying declaration, statements of love and affection do not fall within the exception to the hearsay rule.

**Am Jur 2d, Evidence § 676.**

**Admissibility of dying declarations in civil case. 47 ALR2d 526.**

6. **Evidence § 26 (NCI3d) — liability of pharmacy and pharmacist — anaphylactic reaction — bottles of medication — not admissible**

The trial court did not err in a negligence action against a pharmacy and pharmacist arising from a fatal anaphylactic reaction by excluding empty bottles of medication because the proper foundation for showing that the bottles were sufficiently identical to ones used at the time of death had not been laid.

**Am Jur 2d, Evidence § 774.**

7. **Evidence § 33.1 (NCI3d) — liability of pharmacy and pharmacist — Physician's Desk Reference — not admissible as exhibit**

The trial court did not err in a negligence action against a pharmacist and pharmacy arising from a fatal anaphylactic reaction by excluding exhibits of blown-up excerpts from the Physician's Desk Reference. Statements from learned treatises may be read into evidence, but may not be received as exhibits. N.C.G.S. § 8C-1, Rule 803(18).

**Am Jur 2d, Evidence § 890.**

8. **Appeal and Error § 330 (NCI4th) — civil appeal — formal request for transcript — substantial compliance**

The Court of Appeals declined to disturb a trial court ruling that plaintiff had "substantially complied" with North Carolina Rule of Appellate Procedure 7(a)(1), requiring an ap-

FERGUSON v. WILLIAMS

[101 N.C. App. 265 (1991)]

pellant in a civil case to make a formal request for a copy of the trial transcript within ten days of filing notice of appeal.

**Am Jur 2d, Appeal and Error §§ 86, 404.**

CROSS-appeals by plaintiff and defendants from judgments entered 12 October and 20 November 1989 by *Judge Joseph John* in FORSYTH County Superior Court. Heard in the Court of Appeals 27 November 1989.

This medical malpractice action was originally brought by plaintiff, Mary T. Ferguson, wife of the decedent Charles W. Ferguson, Jr., against Dr. John T. Hayes, Margaret Williams and Ring Drug Company d/b/a Bobbitt's Professional Pharmacy ("Bobbitt's"). The complaint alleges that in December 1984 Hayes prescribed a drug for the decedent known as Indomethacin or Indocin, and that the prescription was properly filled by Williams, who at the time was a pharmacist employed by Bobbitt's. The complaint further alleges the medication was taken the following day, 18 December 1984, and that the decedent suffered an anaphylactic reaction which resulted in his death.

Thereafter, defendants Williams and Bobbitt's filed a motion to dismiss pursuant to Rule 12(b)(6), and on 27 April 1987 the motion was granted. Plaintiff reached a settlement with Hayes and a dismissal was taken as to the allegations and suit against him. Plaintiff appealed the judgment as to Williams and Bobbitt's and in an opinion filed 20 December 1988, this Court reversed the 12(b)(6) dismissal.

A jury trial in this matter began on 7 August 1989 in Forsyth County Superior Court. The trial lasted two weeks. Both at the close of plaintiff's evidence and again at the close of all evidence, defendants made motions for a directed verdict pursuant to Rule 50(a). The trial judge reserved ruling upon these motions. After deliberating for one day, the jury foreman reported the jury would be unable to ever reach a verdict. Judge John made findings that the jury was hopelessly deadlocked and declared a mistrial. On 12 October 1989, Judge John granted defendants' motion for directed verdict and plaintiff gave notice of appeal.

On 25 October 1989, defendants filed a motion to dismiss plaintiff's appeal pursuant to Rules 7(a)(1) and 25 of the North Carolina Rules of Appellate Procedure because plaintiff had failed to file

a written order for a copy of the trial transcript with the court reporter within ten days of filing notice of appeal. The trial court denied the motion to dismiss the appeal, finding that plaintiff had "substantially complied" with the appellate rules. Defendants have appealed this order.

Plaintiff's evidence tends to show the following facts: At the time of his death, Charles W. Ferguson, Jr., the deceased husband of plaintiff, was a forty-two-year-old electrician. During the last two years of his life, Ferguson suffered from some serious health problems. He had explosive asthma, which in the past had resulted in sudden life-threatening attacks. Ferguson also suffered from a rare medical condition known as "triad asthma," which has three components: asthma, sensitivity to aspirin and the presence of polyps in the nose. Persons with this condition have a severe reaction to aspirin or aspirin-containing compounds.

In the summer of 1984, Ferguson had almost died after taking Percodan, a medication that contains the narcotic oxycodone and aspirin. After taking one tablet of Percodan, Ferguson had had an anaphylactic-bronchospastic reaction to the aspirin component of the Percodan and nearly died.

Both before and after the Percodan incident, Ferguson's doctors had warned him of the severity and rarity of his condition and had told him that if he ingested aspirin or aspirin-containing products he would die. One of Ferguson's doctors told Ferguson never to take *any* medication without first calling him. At least two doctors told Ferguson to get a medical alert bracelet to show his allergies. Ferguson never got the bracelet, but he carried an emergency medical card, which listed his drug allergies as "aspirin, penicillin, Percodan."

On 17 December 1984, Ferguson visited Hayes, an orthopedic surgeon, for a follow-up visit regarding pain in his legs. Hayes diagnosed the problem as gout and prescribed the drug Indocin. Although allegedly asked by Hayes if he had any drug allergies, Ferguson apparently responded that he was only allergic to penicillin. According to Hayes' testimony, Ferguson never mentioned the Percodan incident, nor did he show Hayes his card listing his drug allergies. However, after this litigation arose, a copy of Ferguson's medical card showing his three drug allergies was found in Hayes' file on Ferguson. Hayes also advised Ferguson not to leave the area for a few days in the event he might have some reaction

to the Indocin. Ferguson, however, told Hayes he could not follow these instructions because he had to leave town to go to a job site.

Ferguson took the prescription for Indocin to Bobbitt's Pharmacy. He had never traded at Bobbitt's and he did not know defendant Williams, who was a licensed pharmacist working there. Ferguson presented the prescription to the pharmacist and a discussion followed concerning his drug allergies. Ferguson told Williams he was allergic to Percodan and described his earlier brush with death. On Ferguson's prescription, Williams wrote, "Allergic to Percodan." Ferguson asked Williams if Percodan and Indocin were related. She replied that the two drugs were in different classes.

According to Williams, Ferguson did not tell her of his other allergies. He did not mention his aspirin allergy or show her his emergency medical card. While this conversation ensued, Williams properly filled the prescription for fifty pink and white colored Indocin capsules.

Ferguson then left for Charleston, South Carolina to go to a work site. He arrived at the site on the evening of 17 December 1984 and met Tim Ellison, a friend and co-worker. Ellison testified that Ferguson spoke about his concern over taking the new prescription and wanted Ellison to be familiar with how to administer his asthma medication and with the route to the nearest hospital.

On the morning of 18 December, Ferguson suffered a severe attack of bronchial asthma, apparently triggered by an anaphylactic reaction. He died in the emergency room of a Charleston hospital. According to the autopsy report, the cause of death was an anaphylactic reaction probably due to Indocin. The autopsy, however, did not confirm the presence of Indocin in Ferguson's body. Remnants of a white tablet, which was not Indocin, were found in the decedent's stomach, but no trace of a pink and white capsule was found.

*Michael R. Nash for plaintiff appellant.*

*Petree Stockton & Robinson, by J. Robert Elster and Stephen R. Berlin, for defendant appellants.*

ARNOLD, Judge.

Although plaintiff brings forth a number of assignments of error, the crux of this appeal is whether plaintiff presented sufficient evidence to withstand defendants' motion for directed verdict

on three grounds. The first is whether plaintiff presented evidence sufficient to show Williams breached the applicable standard of care when she advised Ferguson that Percodan and Indocin were unrelated. Second is whether plaintiff provided sufficient evidence to show Ferguson's ingestion of Indocin caused his death; and third, whether decedent was contributorily negligent in not telling Williams that he was allergic to aspirin or that he had triad asthma.

[1] The party moving for a directed verdict bears a heavy burden in North Carolina. *Taylor v. Walker*, 320 N.C. 729, 360 S.E.2d 796 (1987). Ordinarily, a judgment for directed verdict is not proper unless as a matter of law recovery cannot be had by plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977).

A directed verdict motion tests the legal sufficiency of the evidence to take the case to the jury in support of a verdict for the nonmoving party. *Everhart v. LeBrun*, 52 N.C. App. 139, 277 S.E.2d 816 (1981). A directed verdict is appropriate only when the issue submitted presents a question of law based on admitted facts where no other conclusion can reasonably be reached. *Seaman v. McQueen*, 51 N.C. App. 500, 277 S.E.2d 118 (1981). When considering a defendant's motion for a directed verdict, a trial court must view the evidence in the light most favorable to the plaintiff, resolving all conflicts in his favor and giving the plaintiff the benefit of every inference that reasonably can be drawn in his favor. *Cantey v. Barnes*, 51 N.C. App. 356, 276 S.E.2d 490 (1981). The reviewing court performs the identical task, that is, to determine whether the evidence, when considered in the light most favorable to the nonmovant, was sufficient to have been submitted to the jury. *Meacham v. Montgomery County Board of Education*, 59 N.C. App. 381, 297 S.E.2d 192 (1982), *cert. denied*, 307 N.C. 577, 299 S.E.2d 651 (1983).

The movant's burden is even heavier in cases, such as the one before us, in which the principal issues are negligence and contributory negligence. *Taylor*, 320 N.C. 729, 360 S.E.2d 796. Issues arising in negligence cases are ordinarily not susceptible of summary adjudication because application of the applicable standard of care is generally for the jury. *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E.2d 255 (1979). In cases involving negligence and contributory negligence, greater judicial caution is therefore

called for. *Gladstein v. South Square Assoc.*, 39 N.C. App. 171, 249 S.E.2d 827 (1978), *cert. denied*, 296 N.C. 736, 254 S.E.2d 178 (1979).

Applying these principles here, we conclude that the trial court erred in allowing defendants' motion for directed verdict.

It is clear that a pharmacist who properly fills a prescription as written by a physician is under no duty to warn a customer about potential risks or dangers associated with taking the medication. *Batiste v. American Home Products Corp.*, 32 N.C. App. 1, 231 S.E.2d 269, *cert. denied*, 292 N.C. 466, 233 S.E.2d 921 (1977); *see also Ferguson v. Williams*, 92 N.C. App. 336, 374 S.E.2d 438 (1988). A druggist simply has the duty to act with due, ordinary care and diligence in compounding and selling drugs. *Batiste*, 32 N.C. App. at 8, 231 S.E.2d at 274 (citing *Spry v. Kise*, 179 N.C. 417, 102 S.E.2d 708 (1920)). *Batiste*, however, recognizes that if a pharmacist undertakes to advise a client concerning a medication, the pharmacist is under a duty to advise correctly. *Id.*

Plaintiff presented the testimony of three pharmacy experts who testified that once Williams undertook to advise Ferguson about the relationship between Indocin and Percodan in the context of Ferguson possibly having a severe drug allergy, she did not exercise due care in advising him that the two drugs were unrelated. Percodan contains oxycodone, a Schedule II narcotic, and aspirin. Indocin does not contain aspirin, but like aspirin, it is a nonsteroidal anti-inflammatory agent. Both have the same "mechanism of action" in inhibiting prostaglandin biosynthesis, and both share a common cross-sensitivity in that if a person is allergic to aspirin, it is probable he will be allergic to Indocin.

It is undisputed that Williams knew Ferguson was allergic to Percodan and that she knew Percodan contains aspirin. It is also clear she knew Ferguson had suffered from an anaphylactic reaction to Percodan. According to the three experts, this information was sufficient to have alerted Williams that Ferguson might suffer from a cross-sensitivity with Indocin. Faced with this evidence, it was error for the trial judge to grant defendant's motion for directed verdict on the basis plaintiff did not establish defendant owed the decedent any legal duty.

We are further persuaded in reaching this conclusion because the credibility of a witness is crucial in the determination here.

Whether or not Williams owed Ferguson a duty depends on what was said during the conversation that occurred while Williams filled Ferguson's prescription. The only testimony of that conversation is from the defendant herself. Witness credibility is a determination made by a jury, not a judge. *Stutts v. Green Ford, Inc.*, 47 N.C. App. 503, 267 S.E.2d 919 (1980).

[2] Closely related to the issue of Williams' duty to Ferguson is whether Ferguson was contributorily negligent in bringing about his own death. A directed verdict for a defendant on the ground of contributory negligence may only be granted when the evidence, taken in the light most favorable to plaintiff, establishes contributory negligence so clearly that no other reasonable inference or conclusion may be drawn. *Horne v. Trivette*, 58 N.C. App. 77, 293 S.E.2d 290, *cert. denied*, 306 N.C. 741, 295 S.E.2d 759 (1982).

While it is obvious Ferguson might have averted this tragedy with a more explicit explanation of his drug allergies, we are not prepared to say, based on plaintiff's evidence, that the decedent's conduct renders him negligent as a matter of law. Three expert witnesses testified Ferguson apparently gave Williams enough information to alert her that Ferguson might have a severe allergic reaction to the Indocin. We believe reasonable people could form differing opinions on this issue based upon this evidence. Therefore, directed verdict based on the decedent's contributory negligence was improper.

[3] Defendants also argue plaintiff failed to show to a reasonable degree of certainty that Ferguson's death was precipitated by his ingestion of Indocin. Defendants point to several facts established by plaintiff's evidence to support their contention: Ferguson was allergic to a number of allergens that could have triggered his asthmatic bronchospasm; no one saw Ferguson take the Indocin; a gross examination of the decedent's stomach contents on autopsy revealed only fragments of a white tablet, no traces of a pink and white capsule were found; and no trace of Indocin was discovered in the decedent's urine.

A directed verdict is appropriate when the "evidence raises a mere conjecture, surmise and speculation as to [causation]." *Hinson v. National Starch & Chemical Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990). We find, however, plaintiff's evidence is certain to a reasonable degree to show causation.

FERGUSON v. WILLIAMS

[101 N.C. App. 265 (1991)]

Tim Ellison testified that after Ferguson's attack started on 18 December, the decedent told Ellison to call an ambulance because he thought he was dying. In close proximity to this statement, Ferguson handed Ellison the bottle containing the Indocin capsules and told Ellison to give it to the doctor at the hospital because the bottle contained the medication he had taken that morning. After Ferguson died, it was discovered that the bottle of medication contained forty-nine capsules. Ferguson's prescription called for fifty capsules.

The autopsy evidence was uncontroverted that Ferguson had suffered from a severe anaphylactic reaction caused by an allergen. A toxicologist testified the Indocin capsule would have been absorbed into the stomach lining and then into the bloodstream. The toxicologist also testified that within less than an hour after the anaphylactic reaction hit and Ferguson suffered respiratory and cardiac arrest, his circulation would cease and no more urine would have been produced. Given the timing of the events, the toxicologist stated he would not have expected to see any Indocin in the decedent's urine. The directed verdict was therefore inappropriate on the ground that the facts failed to establish the element of causation to a sufficiently certain degree.

[4] Plaintiff also assigns as error the trial court's exclusion of portions of the testimony of two witnesses and several exhibits. Excluded from admission were portions of the deposition testimony of Dr. Bishop, the emergency room physician who treated Ferguson and pronounced him dead. The contested statements are all remarks made by Ferguson to Ellison and then to Bishop. As such, all the statements constituted hearsay within hearsay and failed to fall under any exception to the rule. Therefore, they were properly excluded. *See* N.C.R. Evid. 805. This assignment of error is overruled.

[5] Plaintiff also contends the trial court erroneously excluded testimony and a letter concerning a hearsay statement made by Ellison. Plaintiff contends Ellison should have been allowed to testify that as Ferguson was dying, the decedent said, "[t]ell Mary [his wife] and the kids I love them," because the statement constituted a dying declaration. Plaintiff also sought to introduce a letter written by Ellison containing the same declaration. We find no error in these assignments. To fall within this hearsay exception, the declaration must deal with the cause and circumstances of the declarant's anticipated death. 1 L. Brandis, *Brandis on North Carolina*

*Evidence*, § 146 at 673 (3d ed. 1988). Statements of love and affection, which plaintiff sought to introduce for purposes of proving damages, do not fall within the rule.

[6]   Plaintiff also complains the trial court erred in excluding from evidence exhibits of empty bottles of Percodan and Indocin. The labels on these bottles listed the active ingredients of each medication. The exhibits, however, were not the actual bottles involved in the 1984 incident, *see State v. Zuniga*, 320 N.C. 233, 255, 357 S.E.2d 898, 912 (1987), *cert. denied*, 484 U.S. 959, 98 L.Ed.2d 384 (1987), nor, at the point in time plaintiff's counsel sought to have them introduced, had plaintiff's counsel properly shown that the bottles were sufficiently identical duplicates to the 1984 bottles. *State v. Hunt*, 297 N.C. 258, 254 S.E.2d 591 (1979). Our reading of the record shows that when plaintiff's counsel sought to introduce the exhibits and defendant properly objected, the proper foundation for showing that the bottles were sufficiently identical to the ones used in 1984 had not been laid. Later, plaintiff arguably elicited testimony to show the exhibits were identical duplicates, but then did not move to have the exhibits introduced as exhibits. This assignment of error is overruled.

[7]   Finally, plaintiff assigns error to the trial court's exclusion of exhibits of blown-up excerpts from the treatise, the Physician's Desk Reference, concerning the contraindications for Percodan and Indocin. Statements from learned treatises, however, if admitted, may be read into evidence but may not be received as exhibits. N.C.R. Evid. 803(18). Plaintiff's assignment of error is overruled.

[8]   Defendants have appealed one issue from below. On 25 October 1989, defendants brought a motion to dismiss plaintiff's appeal pursuant to Rules 7 and 25 of the North Carolina Rules of Appellate Procedure. Rule 7(a)(1) requires an appellant in a civil case to make a formal request for a copy of the trial transcript within ten days of filing notice of appeal. In their motion, defendants asserted plaintiff failed to comply with this rule. Judge John held a hearing and denied defendants' motion, finding that plaintiff had "substantially complied" with the rule. We decline to disturb this finding on appeal.

The order granting defendants' motions for directed verdict is reversed. Plaintiff is entitled to a new trial.

New trial.

Judges EAGLES and PARKER concur.