Brady, J.
Plaintiffs brought this action against defendant, Brockton Oaks CVS, Inc. (“CVS”), alleging that it negligently filled prescriptions by supplying medication to the deceased plaintiff, Jennifer Lynne Cafarelle (“Jennifer”), at a rate faster than that prescribed. Plaintiffs argue that defendant should have refused to refill the prescriptions before the normal time and should have warned Jennifer, her parents, and/or her physician that Jennifer was overusing the prescribed medication and that such overuse was potentially dangerous. Plaintiffs further allege that defendant’s conduct caused Jennifer’s death. Plaintiffs bring claims for wrongful death, conscious pain and suffering, emotional distress, and violations of G.L.c. 93A.
Defendant moved for summary judgment pursuant to Mass.R.Civ.P. 56 claiming that, as a matter of law, it only had a duty accurately to fill the subject prescriptions and it had no affirmative duly to warn plaintiffs of the dangers associated with overusing the subject prescription drug medication. Defendant also argued that plaintiffs have not put forth sufficient facts showing that its conduct caused Jennifer’s death. On February 29, 1996, I denied defendant’s motion, with memorandum to follow.
BACKGROUND
On July 3, 1991, Jennifer died from acute respiratory failure associated with a severe asthma condition from which she suffered since infancy. At the time of her death, Jennifer was thirteen years old. On July 2, 1991, Jennifer and a few friends went to the Brockton Fair under the supervision of a family friend, Mary Sullivan. Jennifer began having breathing problems sometime in the late afternoon or early evening on that day. Jennifer experienced an asthma attack, used her Proventil inhaler, and eventually emptied it in an attempt to stabilize her breathing. At approximately 10:30 p.m., Jennifer was transported by ambulance to the Goddard Memorial Hospital in Stoughton suffering from respiratory distress. Jennifer was taken to the hospital Emergency Department and eventually died in the early morning of July 3, 1991. The clinical diagnosis at the time of her death was asthma with acute exacerbation and severe acute respiratory distress.
Jennifer began treatment for asthma with Dr. Michael Lawrence, an allergist, when she was three and one half years old. Lawrence and the other doctors with whom he was associated at Goddard Memorial Hospital treated Jennifer until her death in July 1991. Jennifer had moderate asthma with occasional severe exacerbations which required aggressive therapy with corticosteroids, environmental control, and allergy shots. Jennifer was admitted several times to the hospital suffering from status asthmaticus, which is a severe and prolonged asthma attack. Jennifer also had frequent office visits for acute asthma.
In the year before her death, Dr. Lawrence and his associates treated Jennifer approximately once per month. During that period, Dr. Lawrence prescribed a Proventil Inhaler to Jennifer to be used on an “as needed” basis. At the time of her death, Jennifer was also taking Theodur tablets, Intal/Alupent (administered through an electrical nebulizer), Alupent tablets, and Azmacort. Proventil and Azmacort are beta-ago-nists and are used to treat the symptoms of asthma by opening up the lung passages; they do not affect the inflammation in the lungs.
The Proventil inhaler prescribed by Dr. Lawrence contained two hundred metered doses. At eight puffs per day, the inhaler would last about one month. Dr. Lawrence testified at his deposition that when he first issued the inhaler to Jennifer, he instructed her on the proper breathing technique and he advised her not to use the inhaler more than two puffs up to four times a day, at a maximum. Dr. Lawrence stated that he discussed with Jennifer and her mother the consequences of exceeding the recommended maximum dosage. Dr. Lawrence also stated that he told them that overuse of the inhaler could result in possible accelerated heart rate or cardiac arrhythmia and the masking of worsening symptoms of asthma. In the seven month period before Jennifer’s death, Dr. Lawrence and his associates issued her a number of prescriptions for Proventil inhalers, all of which were filled at the defendant pharmacy.
During the relevant time period, CVS had an in-store computer used by the pharmacists when filling and refilling customer prescriptions. This computer system allowed the pharmacist to access a customer’s prescription profile showing the customer’s entire prescription history at that store. When a prescription was initially filled the pharmacist would type into the computer the number of days the prescription should last based on the quantity and dosage prescribed by the physician. If a customer requested a refill too soon, the computer alerted the pharmacist with a warning prompt. The purpose of the warning prompt was for insurance payment purposes and also to alert the *258 pharmacist that the customer may be overusing the medication. The pharmacist must manually override the warning prompt if he makes the decision to dispense the prescription in spite of the warning. According to plaintiffs’ expert, Dr. Thomas M. Golbert (“Dr. Golbert”), CVS pharmacists filled Jennifer’s prescriptions for Proventil inhalers approximately three times more frequently than is standard practice or recommended use of these medications.
A CVS pharmacist, James Grobman (“Grobman”), testified that a pharmacist has a duty to alert the doctor when the pharmacy computer alert warns that the customer may be overusing the prescribed medication and that the pharmacist also has a duty to warn the patient that she may be overusing the medication. CVS has produced no documentation that any of its pharmacists ever warned the prescribing physician that Jennifer was overusing any of her medications. However, Grobman stated in his deposition that he called Dr. Lawrence’s office and told the secretary that he had concerns about Jennifer’s overuse of the Pro-ventil inhalers. Grobman also stated that he told Mrs. Cafarelle that Jennifer was overusing the inhalers. Conversely, Jennifer’s parents contend in their answers to interrogatories that CVS did not inform them of the dangers associated with overusing the asthma medication. Whether Mr. Grobman provided these warnings is a disputed factual issue which cannot be resolved on summary judgment.
Sometime in April 1991, and apparently for insurance purposes, Grobman entered a new prescription for Jennifer’s inhaler into the pharmacy computer as a fifteen-day supply, as opposed to the previous twenty-five day supply. However, Jennifer was given the usual seventeen-gram inhaler canister which should have lasted her for at least twenty-five days if used as recommended. CVS treated another prescription on May 13, 1991 as a fifteen-day supply. Grobman stated that he informed Dr. Lawrence’s office that this change was needed to provide the medication to Jennifer at a faster rate and to ensure that the insurance company would pay for the medication. Grobman testified that he received approval of this change from a staff member at Dr. Lawrence’s office. However, the prescriptions that CVS has presented allegedly authorizing these changes do not indicate a reduction in the amount of medicine Jennifer received or a change in the rate at which the inhaler was supposed to be used. Again, these are simply disputed factual issues.
DISCUSSION
CVS argues that it had no duty to warn plaintiffs or Jennifer’s physicians that she was overusing her prescribed medication and that such overuse may pose a danger to her health. This Court rules that CVS did have a duly to exercise reasonable care in the dispensing of medication to Jennifer; and that a rational jury could conclude that the defendant’s failure to warn plaintiffs or Jennifer’s physicians about her overuse of the prescribed inhaler was a breach of this duty. For this reason, I denied the motion for summary judgment.
There are apparently no Massachusetts cases on point discussing the nature of the duty pharmacists owe to their customers. However, other state and federal courts have addressed similar issues, and a review of some of these cases is helpful.
I. Pharmacist’s Duty of Care
The general rule is that a pharmacist owes his customers a duty of ordinary care to conduct his business as an ordinary skillful pharmacist would under similar circumstances. 28 C.J.S., Drugs and Narcotics §49 (1996). Because of the dangers involved in the drug business, due care for a pharmacist requires the highest degree of prudence, thoughtfulness, vigilance, and exact and reliable safeguards. Id. The issue of what constitutes due care for a pharmacist has been recently addressed by several state courts.
A. Evolution of Pharmacist’s Duty to Warn[1]
The issue of whether a pharmacist has a duty to warn customers of potential dangers associated with prescribed medication is one of relatively recent vintage. Earlier cases addressing the issue had narrow opinions with specific factual situations not proper for use as precedents for a comprehensive duty to warn. Fuhs v. Barber, 140 Kan. 373, 36 P.2d 962 (1934); Krueger v. Knutson, 261 Minn. 144, 111 N.W.2d 526 (1961), as cited in Brushwood, supra at 166-167.
In 1982, two state appellate court rulings implied that a pharmacist may have a duly to warn customers of dangers associated with medication when the prescribed drugs were contraindicated or may have had harmful interactions with other substances. Hand v. Krakowski, 453 N.Y.S.2d 121 (1982) (pharmacist knew that customer was alcoholic and knew or should have known that prescribed drugs were contraindicated with use of alcohol; because of a potential duty to warn, case not ripe for summary judgment; question of fact existed as to whether pharmacist had a duty to warn customer of danger involved and to consult prescribing physician); Perkins v. Windsor Hospital Corp., 142 Vt. 305, 455 A.2d 810 (1982) (plaintiff alleged harm due to pharmacy’s failure to warn her of harmful interaction between prescribed drug and alcohol; since case went to jury against pharmacy, decision seems to imply that court found that duty to warn existed).
Following Hand and Perkins were three cases, grounded in products liability law, but involving a pharmacist as one of the defendants. Batiste v. American Home Products Corp., 32 N.C. App. 1, 231 S.E.2d 268 (1977); Bichler v. Willing, 397 N.Y.S.2d 57 (1977); McLeod v. W.S. Merrell, Co., 174 So. 2d 736 (Fla. 1965). The focus of these cases was on the defective nature of the drug product and the lack of an adequate warning about the potential danger of using the product. In all three cases, the court held that the pharmacist had no duty to warn the customer because the *259 pharmacist was unaware of the potential harm associated with the use of the drug. The various courts reasoned that since a duty to warn arises from superior knowledge and the foreseeability of the harm, no duty to warn can exist where the pharmacist has no knowledge of the potential risk of harm.
After these cases, courts continued to hold that a pharmacist has no duty to counsel a patient. In Pysz v. Henry’s Drug Store, 457 So.2d 561 (Fla. Dist. Ct. App. 1984), the plaintiff alleged that his pharmacist was negligent in failing to warn him of the addictive propensities of the prescribed medication and that the pharmacist should have warned plaintiffs physician that plaintiff had become addicted to the drugs. The court held that the pharmacist had no duty to warn the plaintiff of the addictive nature of the medication and that instead, the physician had the duty to know the drug he or she was prescribing and properly to monitor the patient’s use of the drug.
The plaintiff in Jones v. Irwin, 602 F. Supp. 399 (S.D. Ill. 1985), also alleged that the pharmacist failed to warn him about the potential adverse reactions to the prescribed medication. As in Pysz, the court held that the pharmacist had no duty to warn the customer or to notify the physician that the drug was being prescribed in dangerous amounts, that the patient was being overmedicated and that the drugs may cause adverse reactions in patient. The Jones court also looked to the physician as the person with the duty to warn the patient about the dangers associated with taking the prescribed medication.
The Indiana Court of Appeals held in Ingram v. Hook’s Drugs, Inc., 476 N.E.2d 881 (Ind. Ct. App. 1985), that a pharmacist had no duty to warn a patient about the adverse reactions associated with taking Valium. The court reasoned that imposing a duty to warn on the pharmacist would inject a third party into the doctor-patient relationship and could undercut the effectiveness of the medical treatment.
One year later, the Pennsylvania Superior Court went against the tide and decided that the evidence presented at trial was sufficient to establish that the defendant pharmacy breached its duly of due care “by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff." Riff v. Morgan Pharmacy, 353 Pa. Super. 21, 508 A.2d 1247, 1252 (1986).
Despite the ruling in Riff, subsequent drug products liability cases continued to hold that a pharmacist could not be liable for a failure to warn about the potential adverse effects of prescription drugs. See Raynor v. Richardson-Merrell, Inc., 643 F. Supp. 238 (D. D.C. 1986); Ealy v. Richardson-Merrell, Inc., Prod. Liab. Rep. (CCH) 11,236 (D.D.C. 1987); Makripodis v. Merrell-Dow Pharmaceuticals, Inc., 361 Pa. Super. 589, 523 A.2d 374 (1987). The premise of these cases appeared to be that under the learned intermediary doctrine, a manufacturer should warn the physician about dangers associated with a drug, and the physician, not the pharmacist, should relay this information to the patient. As in earlier drugs products liability cases, the bottom line appeared to be that a pharmacist had no duty to warn the patient about potential adverse effects that he does not know about.
The Michigan Appeals court, in rejecting the holding of Riff, held that when there is no obvious inadequacy appearing on the face of the prescription which poses a threat of serious harm to patient, there is no duty to warn. Stebbins v. Concord Wrigley Drugs, Inc., 164 Mich. App. 204, 416 N.W.2d 381 (1987). Following Stebbins, in Adkins v. Mong, 168 Mich. App. 726, 425 N.W.2d 151 (1988), the same court held that a pharmacist has a duty properly to fill prescriptions. The plaintiff alleged that the pharmacist had additional duties: to maintain detailed customer records and to identify addicted customers and over-prescribing physicians. The court rejected this claim holding that a pharmacist has no duty to warn plaintiff of potential side effects of drugs it dispenses in accordance with facially valid prescriptions. The court also held that a pharmacy has no duty to monitor and intervene with a customer’s reliance on drugs prescribed by the treating physician.
One court has held that although a pharmacist has no affirmative duly to advise a customer absent knowledge of the circumstances regarding her taking of medication, once a pharmacist is alerted to the specific facts and undertakes to advise the customer, the pharmacist has a duty to advise correctly. Ferguson v. Williams, 92 N.C. App. 336, 341, 374 S.E.2d 438, 440 (1988), rev’d on other grounds, 101 N.C. App. 265, 272, 399 S.E.2d 389, 393 (1991),[2] citing Batiste, supra 32 N.C. App. at 8, 231 S.E.2d at 274.
In McKee v. American Home Products Corp., 113 Wash. 2d 701, 782 P.2d 1045 (1989), the plaintiff alleged that the defendant pharmacy was negligent in filling prescriptions for a certain medication over a ten year period. Plaintiff argued that pharmacy should have warned her of adverse effects associated with using medication over such an extended period. The court affirmed summary judgment for the pharmacy. The court followed the reasoning of prior decisions which held that imposing a duty to warn on the pharmacist would impede the doctor-patient relationship and create antagonistic relations between pharmacists and physicians. The court did hold, however, that a pharmacist should have a duty to be alert for patent errors in a prescription, i.e., obvious lethal dosages, inadequacies in the instructions, known contraindications, or incompatible prescriptions, and to take corrective measures. McKee, 782 P.2d at 1053.
In Dooley v. Everett, 805 S.W.2d 380 (Tenn. Ct. App. 1991), the defendant pharmacy filled prescriptions for two drugs that had a known adverse interaction. While the trial court held that the pharmacy was entitled to summary judgment, the appellate court reasoned that *260 a pharmacist owes a duty, as a matter of law, to the patient who presents a prescription. However, the court held that the extent of that duly (i.e. whether or not it includes a duty to warn in addition to a duty to accurately fill the prescription) is a question of fact. Cf. Georgia Osteopathic Hospital, Inc. v. O’Neal, 198 Ga. App. 770, 403 S.E.2d 235 (1991) (medication prescribed by attending physicians and no suggestion that pharmacy made any mistakes; pharmacy in no position to override medical judgments of physicians).
Pittman v. Upjohn Co., 890 S.W.2d 425 (Tenn. 1994), presented a scenario where a third party accidentally ingested medication prescribed for the patient. The court held that in addition to filling a prescription correctly, the pharmacy had a duty to warn the patient of dangers involved in taking the subject medication. Neither the pharmacy nor the physician had warned the patient of dangers associated with prescribed medication. Since drug posed danger to patient even if taken according to physician’s orders, and patient was not warned of these dangers, court held it was reasonably foreseeable that patient was at risk for injury. However, under the circumstances of the case, the court held that the injury to the third party was not foreseeable, therefore the duty to warn did not extend to him.
Adopting a minority position, the Arizona Court of Appeals in Lasley v. Shrake’s Country Club Pharmacy, Inc., 179 Ariz. 583, 880 P.2d 1129 (1994), rejected the argument that pharmacists should have no duty to counsel patients. The court held that, as a matter of law, pharmacists have a duly to counsel patients. However, the scope of that duty was a genuine issue based on disputed material facts.[3]
In Lasley, the pharmacy mailed one or more allegedly addictive drugs to the customer over a ten year period. The customer allegedly became dependent on the drugs. The customer claimed that the pharmacy breached the standard of care for a pharmacist. The pharmacy argued that, as a matter of law, a pharmacist has no duty to warn of a drug’s dangerous propensities nor does it have a duty to control or keep track of a customer’s reliance on the prescribed drugs.
The plaintiff presented evidence that the standard of care of a pharmacist includes an obligation to advise customers of the highly addictive nature of prescribed drugs. Also, the evidence suggested that a pharmacist should warn the prescribing doctor if the patient is taking medication in quantities inconsistent with recommended guidelines and about the hazards of taking different drugs with adverse interactions. The court concluded that although the pharmacy owed the customer a duty of reasonable care, the question of whether the defendant met that standard was a question of fact.[4]
B.Duty to Refuse to Fill Prescription
Although most courts have held that a pharmacist has a duty accurately to fill a legal prescription, there may be times where a pharmacist feels that it is in the customer’s best interest not to fill a prescription. See 28 C.J.S., Drugs and Narcotics §45(b) (1996); Brushwood, supra at 79-80 (1995 Supp.). Where doses prescribed are unusual, inquiry should be made to ascertain that there has been no error. See Nevada State Board of Pharmacy v. Garrigus, 88 Nev. 277, 496 P.2d 748 (1972); But see Eldridge v. Eli Lilly & Co., 138 Ill. App.3d 124, 485 N.E.2d 551 (1985) (pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn physician of that fact).
C.Duly to Monitor Customer’s Prescriptions
Some courts have also discussed whether a pharmacist’s duty of care includes a duty to monitor a customer’s drug therapy. The Louisiana Court of Appeals held that a pharmacist has a limited duty to inquire or verify from the prescribing physician clear errors or mistakes in prescriptions. Gassen v. East Jefferson General Hospital, 628 So. 2d 256 (La. Ct. App. 1993).
In Kampe v. Howard Stark Professional Pharmacy, Inc., 841 S.W.2d 223 (Mo. Ct. App. 1992), plaintiff alleged that pharmacy accurately filled the prescription but negligently failed to monitor or evaluate the customer’s use of the prescribed drugs. Plaintiff also contended that pharmacist should have reviewed his medical records, evaluated his symptoms, and determined if he needed the prescribed medicine. Like other courts, the court here ruled that it was the physician’s duty, not the pharmacist’s, to know the drug he was prescribing and to properly monitor the patient.
The Georgia Court of Appeals held in Walker v. Jack Eckerd Corp., 209 Ga.App. 517, 434 S.E.2d 63 (1993),[5] that a pharmacist has a duty to the customer to exercise the highest degree of prudence, thoughtfulness, and diligence. The scope of that duty or standard of care is usually a question of fact. Nevertheless, the court ruled that a pharmacist has no duty to warn the customer or notify the physician that a drug is being prescribed in a dangerous amount; that customer is being overmedicated; or that various drugs in prescribed quantities could cause adverse reactions to customer. These duties were part of the physician’s responsibilities.
D.Rapid Refill Cases
As in the present case, a few courts have addressed the pharmacist’s duty in regard to filling a prescription at a rate faster than that prescribed.[6]
In Hooks Superx, Inc. v. McLaughlin, 642 N.E.2d 514 (Ind. 1994), the pharmacy dispensed the subject medication on the basis of written prescriptions or by phone calls to the doctor’s office. The patient consumed the drugs at a rate two and a half times faster than the prescription ordered. The patient alleged that the pharmacy was negligent in failing to refuse to fill *261 the prescription because it knew or should have known that the patient was consuming the drugs so quickly that it became dangerous to his health. The pharmacy alleged that it had no duty to stop filing the prescription.
The Supreme Court of Indiana suggested that to determine whether a pharmacist has an expanded duty beyond that of technical accuracy in processing order, courts must examine three issues: (1) the relationship between the parties: (2) the foreseeability of the harm; and (3) public policy issues. After analyzing these issue, the court held that pharmacist has a duty to monitor a patient’s acquisition of excessive medication.
In contrast to other court decisions on the issue of a pharmacy’s duty of care, the McLaughlin court did not perceive that an adversarial relationship would develop between pharmacists and physicians if a pharmacist decided to stop refilling a prescription when a patient was consuming it more rapidly than prescribed. Instead, the court opined that the recognition of a duty on the part of pharmacists would help to encourage greater cooperation between pharmacists and physicians to work in the best interests of customers and patients. McLaughlin, supra at 519.
The court also recognized that since the prescription history of customers at the subject pharmacy was computerized, their would be no increased operational cost to the pharmacy by imposing a duly to monitor the rate of refilling a prescription. Id.
In acknowledging that a duty of care existed, the court held that the standard of care should be similar to that applied in negligence cases. Specifically, the court determined that “pharmacists must exercise that degree of care that an ordinarily prudent pharmacist would under the same or similar circumstances.” Id. The court further stated that what constitutes due care depends on the particular circumstances of a case and will usually be a question of fact. The court also noted that
[t]he determination of whether due care was exercised in a particular case may involve such issues as the frequency with which the pharmacist filled prescriptions for the customer, any representations made by the customer, the pharmacist’s access to historical data about the customer, the manner in which the prescription was tendered to the pharmacists, and the like.

Id.

The court emphasized its position that the filling of prescriptions faster than prescribed was not necessarily a breach of the duty of care owed since their may be legitimate reasons for faster dispensation rates in certain cases. Finally, the court noted that the customer’s own knowledge about the danger of over-medicating would be relevant in determining the extent of the pharmacist’s breach of the duty of care.
The federal district court in Speer v. United States, 512 F. Supp. 670 (N.D. Tex. 1981), aff'd, 675 F.2d 100 (5th Cir. 1982), in addressing the issue of a pharmacy’s duty regarding medication refills, also held that the pharmacy breached its duty to monitor the refills of the patient’s prescriptions to ensure that the patient did not obtain excessive quantities of the subject drugs. The court reasoned that in filling and refilling prescriptions a pharmacist is required to exercise that degree of care which a prudent person would exercise under similar circumstances. The pharmacists in this case had computerized information on each patient which included instructions on the use of the drug, data on the authorized refills, and the patient’s histoiy of refills. The testimony presented in Speer indicated “that each pharmacist [at the defendant hospital] is responsible for reviewing these documents to ensure that prescriptions are dispensed in correct amounts, with adequate instructions and at proper intervals.” Speer, supra at 679. The court noted that the frequency of the refills by the customer, coupled with the large amount of pills involved, should have alerted the pharmacy that there was a problem and the pharmacy staff should have refused to refill the prescriptions.
The Court of Appeals of Ohio reached a different result in discussing a pharmacy’s duty of care in refilling prescription medication. Laribee v. Super X Drug Corporation, No. CA-876 (Ohio Ct. App. June 24, 1987). Plaintiff brought a claim against the defendant pharmacy claiming that it sold excessive quantities of a drug to the decedent without warning of the adverse effects of such chronic use. In Laribee, the decedent obtained a quantity of drugs far in excess of that prescribed by her physician because the pharmacy filled and refilled prescriptions for her in significantly smaller intervals than that set by the physician. The pharmacist did not warn decedent of the possible dangers associated with the drug which they sold to her. The decedent died as a result of the excessive use of the drug.
The court held that, as a matter of law, the danger of disobeying the prescription directions was as obvious to the customer as it was to the pharmacist. The court also determined that the customer’s disobedience to her doctor’s orders was not due to: (1) the pharmacist’s failure to warn her of the dangers associated with not following the method for taking the medicine; and (2) selling of refills in advance of the time allotted. The court held that the pharmacy had no duty to warn of the danger of the consumption of the drugs more rapidly than the doses prescribed by the doctor.
II. The Instant Case
In the case at bar, the jury could find that CVS knew that the patient was overusing her Proventil inhaler. The CVS computer system alerted the CVS pharmacists that Jennifer was getting the inhalers at improper *262 intervals. The pharmacists were aware of the length of time the inhalers should have lasted if used properly. The risk of her overuse of the medication was not only foreseeable, it was foreseen by the CVS pharmacists. These pharmacists should also have known of the dangers associated with the overuse of the inhalers.
Recognizing that pharmacists have a duty towards their patients does not undermine the doctor-patient relationship. Doctors still have the ultimate responsibility to evaluate the patient’s needs and prescribe the appropriate medication. However, a pharmacist may be in the best position to know when a patient is refilling prescriptions at too fast a rate, and to alert the patient and the physician of the situation. In this way, pharmacists and physicians can work together to provide the best care available to all patients.
Furthermore, even those courts which have held that a pharmacist has no duty to warn a customer about the prescription she is receiving have ruled that a pharmacist has a duty accurately to fill a prescription.[7] Therefore, a recognition of a duly properly to refill medication at the correct intervals should be an obvious corollary to such a rule.
The imposition of a duly of care in this case is also supported by the admission of CVS pharmacist Grob-man who stated that when the pharmacy computer warns that the customer may be refilling the medication too soon, the pharmacist has a duty to alert the prescribing physician and the customer that she may be overusing the medication. In addition, the CVS Pharmacist Responsibilities & Professional Practices states that “each prescription must be analyzed individually to determine its merit and medical necessity” and that a pharmacist must use her sound professional judgment in determining whether to refuse to fill a prescription.
CVS argues that even if it was negligent in filling the subject prescriptions, plaintiff is barred from recovery because plaintiff has not shown that CVS or its agent caused plaintiffs injuries. However, the opinion letter by Dr. Golbert states that
the pharmacist should have reviewed Jennifer’s prescription history with Dr. Lawrence and Dr. Claus to verify that Dr. Lawrence and Dr. Claus wanted her to be using this much medication and, more importantly, to alert Dr. Lawrence and Dr. Claus that Jennifer was developing potentially serious problems with her asthma.
This is enough to create a genuine issue of material fact as to whether the acts or omissions on the part of the CVS pharmacists substantially contributed to causing Jennifer’s death.[8]
In summary, this Court holds that CVS had a duly to exercise that degree of care that an ordinarily prudent pharmacist would have exercised under the same or similar circumstances, and that a jury may determine upon the evidence that CVS breached its duly of care by failing adequately to warn the plaintiffs or Jennifer’s doctors that she was overusing the prescribed medication.
The plaintiffs’ G.L.c. 93A claim will also survive the motion for summary judgment. The CVS conduct of overriding the computer warning system for insurance payment purposes in order to provide refills earlier than prescribed may have been an unfair practice by creating dangerous conditions which can potentially cause substantial injury to consumers.
ORDER
For the foregoing reasons, defendant CVS’s Motion for Summary Judgment is DENIED.

The subject is discussed in detail in David R. Brushwood, Medical Malpractice: Pharmacy Law (1986 & 1995 Supp.). For a related view, compare Yvonne Bukstein, Comment, Drug Products Liability: Duty to Warn, 49 U. Pitt. L. Rev. 283 (1987) (contending that duty to warn consumers of potential adverse drug reactions should fall upon pharmacies and pharmacists).

See also Frye v. Medicare-Glaser Corp., 219 Ill. App. 3d 931, 579 N.E.2d 1255 (1991), rev’d, 153 Ill. 2d, 605 N.E.2d 557 (1992) (Illinois Supreme Court, reversing appellate court, held no affirmative duty to provide warning to patient, but once pharmacist undertakes to provide warning, it must be complete and accurate. Appeal dealt with specific facts of the case resulting in rule that pharmacist may be liable for acts of commission and not acts of omission (i.e. pharmacy’s warning about drowsiness was accurate and complete: since pharmacy had not undertaken to warn about dangers of alcohol use, no liability for failure to warn). The pharmacy also ignored computer warning in this case).

This case also includes a good list of cases concluding that pharmacists have no legal duty to warn the patient or physician when the physician prescribes excessive doses of a drug. Lasley, supra 179 Ariz. at 587 n.4, 880 P.2d at 1133 n.4.

A recent trend towards imposing a duty of care on pharmacists which includes a duty to warn is also suggested in the American Law Institute’s Restatement of the LawThird, Restatement of the Law Torts: Products Liability, Tent. Draft No.2, §8(e), Comment h and Reporters’ Note (March 13, 1995) (retail sellers of prescription drugs are liable for harm caused by defective design and inadequate instructions or warnings in distribution of such products only if retailers are negligent).

This case includes a good collection of cases analyzing whether a pharmacist has duty to warn the patient or doctor about the prescribed medication. Walker, supra 209 Ga. App. at 522-523, 434 S.E.2d at 68-69.

In a related issue, a few pharmacist negligence cases have focused on the unauthorized refilling of a prescription as the cause of a patient’s damages. The cases usually involve situations where the pharmacy provides refills to the patient after the authorized period for refills has expired. See Brushwood, supra at 82-85 (1995 Supp.) for cases.

See generally 28 C.J.S., Drugs and Narcotics §53 (1996); Timothy E. Travers, Annotation, Druggist’s Civil Liability for Injuries Sustained as Result of Negligence in Incorrectly Filling Drug Prescriptions, 3 A.L.R. 270 (1981).

CVS also argues that the danger of overuse of the subject inhalers was obvious to Jennifer and her parents. This issue is addressed more appropriately at trial.