MURDOCK, Justice
(dissenting).
I respectfully dissent. I do not believe the law imposed upon Publix Super Markets, Inc., or its pharmacist a duty to discuss with Alice Nail the fact that the dosage of her prescription for Coumadin had changed, nor do I believe that Publix or its pharmacist assumed such a duty under the facts of this case.
In Stone v. Smith, Kline & French Laboratories, 447 So.2d 1301, 1305 (Ala.1984), this Court observed:
“ ‘Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his pa *617 tient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a “learned intermediary” between manufacturer and consumer.’ ”
(Quoting Reyes v. Wyeth Labs., 498 F.2d 1264, 1274 (5th Cir.1974)(emphasis added).)
In Walls v. Alpharma USPD, Inc., 887 So.2d 881 (Ala.2004), this Court observed:
“ ‘We agree with the Washington Supreme Court, which surveyed the jurisdictions extending the learned intermediary doctrine to pharmacists and concluded:
“ ‘ “The pharmacist still has a duty to accurately fill a prescription [citation omitted] and to be alert for clear errors or mistakes in the prescription. The pharmacist does not, however, have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer’s package insert.” McKee v. American Home Products [Corp.], 113 Wash.2d [701,] at 720, 782 P.2d 1045 [(1989)].
“ ‘In the present case, the pharmacist accurately filled Nichols’ prescription for Gantanol. There were no clear errors on the face of the prescription, Gantanol was not contraindicated for use by Nichols, and Dr. VandeGarde’s decision to prescribe the drug was within the realm of his professional judgment.
“ ‘Under the facts of this case, Super D Drugs and its pharmacist owed no duty to warn Juanita Nichols or the doctor. Summary judgment was proper.’
“Nichols [v. Central Merchandise, Inc.], 16 Kan.App.2d [65,] at 67-68, 817 P.2d [1131,] at 1133-34 [ (1991) ] [ (some emphasis added) ]. Accord Cottam v. CVS Pharmacy, 436 Mass. 316, 764 N.E.2d 814 (2002); Moore ex rel. Moore v. Memorial Hosp. of Gulfport, 825 So.2d 658 (Miss.2002); Coyle v. Richardson-Merrell, Inc., 526 Pa. 208, 584 A.2d 1383 (1991); Johnson v. Walgreen Co., 675 So.2d 1036 (Fla.Dist.Ct.App.1996); Walker v. Jack Eckerd Corp., 209 Ga.App. 517, 434 S.E.2d 63 (1993); Fakhouri v. Taylor, 248 Ill.App.3d 328, 187 Ill.Dec. 927, 618 N.E.2d 518 (1993); Kinney v. Hutchinson, 449 So.2d 696 (La.Ct.App.1984); Adkins v. Mong, 168 Mich.App. 726, 425 N.W.2d 151 (1988); Ferguson v. Williams, 101 N.C.App. 265, 399 S.E.2d 389 (1991); Griffith v. Blatt, 158 Or.App. 204, 973 P.2d 385 (1999); Morgan v. Wal-Mart Stores, Inc., 30 S.W.3d 455 (Tex.App.2000); Silves v. King, 93 Wash.App. 873, 970 P.2d 790 (1999).
“In McKee v. American Home Products Corp., 113 Wash.2d 701, 782 P.2d 1045 (1989), the Washington Supreme Court stated:
“ ‘The relationship between the physician-patient-manufacturer applies equally to the relationship between the physician-patient and pharmacist. In both circumstances the patient must look to the physician, for it is only the physician who can relate the propensities of the drug to the physical idiosyncrasies of the patient. “It *618 is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.” W. Keeton, R. Keeton & D. Owen, Prosser and Kee-ton on Torts § 96, at 688 (5th ed. 1984).
‘“In Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 770 P.2d 182 (1989), we stated, “proper dosages of medication is not within the scope of matters on which nonphysicians are competent....” Young, at 280, 770 P.2d 182. We went on to hold that “pharmacists are not doctors and are not licensed to prescribe medication because they lack the physician’s training in diagnosis and treatment.” Young, at 230, 770 P.2d 182.
“ ‘Neither manufacturer nor pharmacist has the medical education or knowledge of the medical history of the patient which would justify a judicial imposition of a duty to intrude into the physician-patient relationship. In deciding whether to use a prescription drug, the patient relies primarily on the expertise and judgment of the physician. Proper weighing of the risks and benefits of a proposed drug treatment and determining what facts to tell the patient about the drug requires an individualized medical judgment based on knowledge of the patient and his or her medical condition.... Requiring the phai~macist to warn of potential risks associated with a drug would interject the pharmacist into the physician-patient relationship and interfere with ongoing treatment. We believe that duty, and any liability arising therefrom, is best left with the physician.’
“113 Wash.2d at 711-12, 782 P.2d at 1051.
“On the basis of the foregoing authority and persuasive authority, we hold as follows. The learned-intermediary doctrine forecloses any duty upon a pharmacist filling a physician’s prescription, valid and regular on its face, to warn the physician’s patient, the pharmacist’s customer, or any other ultimate consumer of the risks or potential side effects of the prescribed medication except insofar as the prescription orders, or an applicable statute or regulation expressly requires, that an instruction or warning be included on the label of the dispensed medication or be otherwise delivered. To the extent that the learned-intermediary doctrine applies, foreseeability of injury is eliminated as a basis for liability upon the pharmacist. To the extent that the learned-intermediary doctrine applies, the duty to determine whether the medication as prescribed is dangerously defective is owed by the prescribing physician and not by the phaiynacist filling the prescription.”
887 So.2d at 885-86 (some emphasis added).
In Springhill Hospitals, Inc. v. Larrimore, 5 So.3d 513 (Ala.2008), this Court rendered a judgment in favor of a hospital in a case alleging a breach of duty by the hospital’s pharmacist in giving the patient incomplete dosing information. This Court supported its holding with the following authorities and analysis:
“See Ferguson [v. Williams ], 101 N.C.App. [265,] at 272, 399 S.E.2d [389,] at 393 [ (1991) ] (‘A druggist simply has the duty to act with due, ordinary care and diligence in compounding and selling drugs.... [H]owever, ... if a pharmacist undertakes to advise a client concerning a medication, the pharmacist is under a duty to advise correctly.’); Baker [v. Arbor Drugs, Inc.], 215 Mich. *619 App. [198,] at 205-06, 544 N.W.2d [727,] at 730-31 [ (1996) ] {‘[TJhere is no legal duty on the part of a pharmacist to monitor and intervene in a customer’s reliance on drugs prescribed by a licensed treating physician
[[Image here]]
“Further, the standard of care put forward by the estate would place the physician in a position adjunct to the pharmacist, resulting in exactly the situation our decisions in Walls and Stone sought to prevent, asking the pharmacist to intrude himself or herself into the physician-patient relationship and requiring the pharmacist to give advice or take actions that he or she is neither licensed nor trained to give or take. See Walls, 887 So.2d at 886 (““[The physician’s standard of care regarding] proper dosages of medication is not within the scope of matters on which nonphysicians are competent.... ’ ‘[Pharmacists are not doctors and are not licensed to prescribe medication because they lack the physician’s training in diagnosis and treatment.’ ” ’ (quoting McKee [v. American Home Prods. Corp.], 113 Wash.2d [701,] at 711, 782 P.2d [1045,] at 1051 [ (1989) ], quoting in turn Young [v. Key Pharmaceuticals, Inc.], 112 Wash.2d [216,] at 230, 770 P.2d [182,] at 190 [ (1989) ])).”[2]
5 So.3d at 520-21 (emphasis added; footnote omitted).
Nail complains that Publix failed to fulfill a duty to discuss with her the change her physician had made in the strength of the Coumadin tablets the physician prescribed for her. Based on my reading of the above-quoted authorities, however, I conclude that discussing information of this nature with a patient is part and parcel of the task assigned by these authorities to the physician, i.e., discussing the propriety of and risks associated with taking a given prescription.[3] Where the prescription written by a physician is normal on its face, the duty imposed by law on the pharmacist is to accurately fill that prescription and to notify the customer of any potential interactions between the prescribed drug and other drugs being supplied by the pharmacist to the customer.
Nonetheless, Nail argues that there was testimony by her expert that Publix and its pharmacist violated the applicable standard of care as to Nail. Such testimony cannot establish a duty, however. If a duty exists, an appropriate expert can testify as to the standard of care that must be observed in order to fulfill that duty. An expert cannot, however, create a duty by testifying that one exists. It is the law that imposes duties. Here, unless the pharmacist assumed some duty not otherwise imposed by law, there was no duty to *620 advise the customer of the risks associated with the prescription written by Nail’s physician. The pharmacist’s duty was to fill that prescription correctly.
Nail does in fact argue that Publix assumed a duty to notify her of the fact that the dosage of her medicine had changed. Nail also argues, however, and she testified, that the pharmacist at Publix did not say anything to her in writing or orally regarding her prescription. According to Nail, the pharmacist merely filled the prescription and gave it to her. Whatever internal policies Publix might have had regarding the discussion with customers of prescription changes were only that — internal policies; there is no evidence indicating that the fact of this policy was communicated to Nail or that she relied upon it. Baker v. Arbor Drugs, Inc., 215 Mich.App. 198, 205-06, 544 N.W.2d 727, 730-31 (1996) (“[D]efendant [Arbor Drugs, Inc.,] voluntarily assumed a duty of care when it implemented the Arbortech Plus [computer] system and then advertised that this system would detect harmful drug interactions for its customers.” (quoted with approval in Springhill, 5 So.3d at 520) (emphasis added)); Cottam v. CVS Pharmacy, 436 Mass. 316, 323, 326, 764 N.E.2d 814, 821, 823 (2002) (“A pharmacy, like any other person or entity, may voluntarily assume a duty ... to provide information, advice or warnings to its customers.” “[T]he scope of the duty voluntarily undertaken by a pharmacy is a fact-specific inquiry based on the totality of the pharmacy’s communications with the patient and the patient’s reasonable understanding, based on those communications, of what the pharmacy has undertaken to provide.” (quoted with approval in Springhill, 5 So.3d at 520) (emphasis added)).
Likewise, there is no evidence in this case indicating that Publix or its pharmacist undertook to begin advising Nail as to her medication but did a misleading or inaccurate job of it. Ferguson v. Williams, 101 N.C.App. 265, 272, 399 S.E.2d 389, 393 (1991) (“[I]f a pharmacist undertakes to advise a client concerning a medication, the pharmacist is under a duty to advise correctly.” (quoted with approval in Springhill, 5 So.3d at 520) (emphasis added)). Again, for her part, Nail testified and contends that the pharmacist said nothing to her about the prescription but simply filled the prescription as written and delivered it to her. The record and arguments presented do not, in my view, support a conclusion that Publix or its pharmacist assumed a duty to Nail of the nature she asserts.

. Based on the above-quoted passage from Springhill, including the quoted excerpts from Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 770 P.2d 182 (1989), and McKee v. American Home Products Corp., 113 Wash.2d 701, 782 P.2d 1045 (1989) (cases also discussed in Walls, see discussion, supra), it might be argued that a pharmacist simply has no duty to discuss prescription-drug dosages and risks with a customer and that this lack of duty is not dependent upon the operation of the learned-intermediary doctrine. Neither party asks us to examine the issue in this light or to overrule any cases that treat the learned-intermediary doctrine as apposite in circumstances such as those presented here. The result I advocate in the present case does not turn on whether the lack of duty by a pharmacist is a function of the learned-intermediary doctrine.

. Publix presented evidence indicating that Nail was informed by the physician's nurse that the physician had increased the dosage of her prescribed pills and was instructing her to take the newly prescribed pills only once per day, rather than five times per day as previously had been the case.